## WEEKS v. MARTIN.

*(Supreme Court, General Term, Fourth Department:  July 1, 1890.)*

1. DEED—DESCRIPTION—INDEFINITENESS.

   A deed describing the granted premises as "subdivision of lot No. 4 of division No. 16," etc., followed by the total number of acres contained in lot 4, and then excepting land previously sold, is not, void for indefiniteness, though lot 4 was never subdivided, as it evinces a clear intent to convey the balance of whatever land the grantor owned in lot 4; and the deed will be construed as though the word "of" after the word "subdivision" had been omitted.

2. STATUTE OF FRAUDS—LOCATION OF BOUNDARY LINE.

   Where a vendee of land in possession under his contract of sale becomes dissatisfied with the quantity of land embraced in his contract, a readjustment of the boundary line between himself and his vendor, whereby he is to become the owner of an additional six acres, and a parol agreement that the line so fixed shall be considered as the true boundary, is not a location of a disputed boundary line, but a parol agreement to sell additional land, and is void under the statute of frauds.

3. ADVERSE POSSESSION—TITLE FOUNDED ON WRITTEN INSTRUMENT—WILD LANDS.

   The fact that the vendee occasionally cut timber on the additional six acres, which were uninclosed and unimproved, does not give him title by adverse possession, under Code Civil Proc. N. Y. § 370, which provides that the use of uninclosed land for the supply of fuel or of fencing timber is sufficient to constitute adverse possession by one claiming title "founded on a written instrument;" the vendee's written contract not covering the six acres.

4. REPLEVIN—WHEN LIES—CONSTRUCTIVE POSSESSION.

   The owner of the legal title to uninclosed and unimproved land is in constructive possession, and may maintain replevin for timber wrongfully cut thereon.

Appeal from circuit court, Delaware county.

Replevin by Samuel H. Weeks against William Martin, for a lot of logs. The court directed a verdict in plaintiff's favor for the possession of 40,000 feet of logs valued at $240, and for $22.40 damages for detention.  From a judgment thereon defendant appeals.

Code Civil Proc. N. Y. § 370, provides: "For the purpose of constituting an adverse possession, by a person claiming a title, founded upon a written instrument,  *  *  *  land is deemed to have been possessed and occupied in either of the following cases:  *  *  *  (3) Where, although not inclosed, it has been used for the supply of fuel or of fencing timber, either for the purposes of husbandry, or for the ordinary use of the occupant."

Argued before HARDIN, P. J., and MERWIN, J.

*W. H. Johnson,* for appellant.    *W. F. White,* for respondent.

MERWIN, J.  The litigation in this case is over the ownership of the real estate upon which the logs in controversy were cut.  Both parties claim under Micah White, who, by deed dated April 10, 1846, acquired title to about 1,775 acres in the town of Hancock, Delaware county, being all of subdivision lot No. 4 of division No. 16, in great lot No. 35, of the Hardenburgh patent, except a piece previously sold from the westerly end and a piece of about 25 acres on the easterly end.  On the 3d September, 1851, White deeded to Ira and Hiram Gregory about 200 acres off from the easterly side of his purchase, and running through from the southerly line of lot No. 4 to its northerly line. On the 18th December, 1846, White gave to James H. Sutton a written contract for about 400 acres.  This lay westerly of the Gregory purchase, and extended from the southerly to the northerly line of the lot.  The easterly boundary of the Sutton purchase, as described in the contract, and the westerly boundary of the Gregory purchase, as described in the deed, were identical for about half the way across the lot commencing at the southern line. The lines then diverged, the Gregory line going north, and the Sutton line going north, 25 degrees west, and each running to the north line of the lot. This left a gore bounded on the north by the lot line, on the easterly by the Gregory line, and on the westerly by the Sutton line, and containing about 35 acres.  Upon the westerly part of this gore the logs in question were cut.

The deed under the Sutton contract was given by White to Sutton on August 9, 1873, and the easterly line is there described the same as in the contract. Sutton, on the 13th August, 1873, gave to Polly Martin a mortgage on the premises conveyed to him, and this was afterwards foreclosed, and the defendant became the purchaser on the 25th November, 1878. On the 13th November, 1855, Micah White executed to Daniel S. Weeks, Samuel H. Weeks, and George Weeks a warranty deed of premises, described as follows: "All that piece or parcel of land bounded and described as follows: Subdivision of lot No. 4 of div. No. 16, in great lot No. 35, of Hardenburgh patent, said lot No. 4 formerly containing about nineteen hundred acres, excepting therefrom piece of land sold from westerly end, and about 25 acres sold from easterly end, and 50 acres heretofore in possession of Stephen Husted, and 400 acres, more or less, deeded to James H. Sutton and Charles G. Sutton, formerly contracted to James H. Sutton, and 200 acres, more or less, deeded to Ira B. Gregory and Hiram H. Gregory, which was contracted to Abel Gregory." Under this deed the plaintiff, having duly acquired the rights of the other grantees, now claims to be the owner of the gore referred to. Upon the trial the cutting of the logs by the defendant, and the value, were admitted. At the close of the evidence the defendant asked for a nonsuit upon the grounds (1) that the plaintiff had shown no title to the lands upon which the timber was cut; and (2) that he had shown no possession in himself, and that an action in replevin could not be maintained unless the plaintiff was in possession. This motion was denied, and the defendant excepted. The defendant then requested to go to the jury on the question as to whether, between Micah White and James H. Sutton, there was not a practical location of the boundary line at a certain locality which would make the *locus in quo* a part of the Sutton purchase. This request was denied, and an exception taken.

It was conceded at the trial that if the descriptions in the deeds to Gregory and to Sutton were followed, the premises in dispute would not be included in either. That being so, the paper title of the plaintiff, under the subsequent deeds, became complete, unless there is some force in the point now made by the defendant that the deed to Weeks in 1855 was so indefinite in its description as not to operate to convey what had not been previously deeded or contracted as therein specified. Whatever indefiniteness there is arises from the use of the word "of" after the word "subdivision." The same form of expression is used in the deed to White in 1846; that deed, however, containing further provisions, which placed the intent beyond question to convey the whole lot except as therein stated. There were no subdivisions of No. 4, except as made in the sales, that are expressly excepted in the deed. The total amount in No. 4 is stated, and then the exceptions are stated. Taking the whole description together, the intent is clear to convey the balance of whatever the grantor owned in that lot. The deed should be construed the same as if the word "of" after "subdivision" was omitted. The extraneous circumstances were admissible on the question of construction. *Thayer* v. *Finton*, 108 N. Y. 399, 15 N. E. Rep. 615.

It is further claimed by the defendant that he had the right to go to the jury on the question of practical location. It appears that prior to the making of the Sutton contract in 1846 the parties went upon the premises with a surveyor, and made a survey as incorporated in the contract. There is evidence from which it might be found that in August, 1851, and before the deed to Gregory, White, Sutton, and Gregory went upon the premises, and marked out a line which, instead of following the last course in the contract to the north line of lot No. 4, followed the high lands in a more direct and northerly course to the north line, and that it was there verbally agreed that Sutton's easterly line should be such new line; that afterwards Sutton occasionally cut timber upon his side up to this new line until his death, about 1873. The deed in 1873, to Sutton, did not follow the new line, but followed

the contract. The defendant testifies that after he purchased in 1878 he did nothing upon this part of the premises until 1880, when he cut some timber that had blown down, and after that he cut nothing until the logs in question were cut. These were cut westerly of the line as run in 1851, so that if that is to be deemed the correct easterly line of Sutton and the defendant, then the plaintiff is not the owner of the logs. It is quite apparent from the record before us that the parties, in 1851, were not in the act of locating the line as run in the contract. There was no doubt where that went. But Sutton claimed that the line in the contract did not give him all the land he wanted; did not take him far enough up on the hill. Thereupon a change was made by parol which, if carried out, would give Sutton about six acres more, and place his line at or near the top of the hill. It was not, therefore, a case of locating a disputed boundary, but a parol agreement to sell further land, and designating the line. It was void by the statute of frauds. *Vosburgh* v. *Teator*, 32 N. Y. 568. In that case it is said "that parol agreements to change or establish boundary lines, where there is no dispute or uncertainty, are within the statute of frauds, which require a writing to pass title, thus distinguishing between cases where the line is disputed or uncertain, and those which are not so, the former being binding upon the parties, the latter not."

In the present case no such possession was taken as would furnish a basis for adverse possession. Code Civil Proc. § 370 *et seq.* It was not inclosed or improved or cultivated, and was not founded on a written instrument, as the contract did not cover it. *Pope* v. *Hammer*, 74 N. Y. 240. When the deed came to be given and accepted, in 1873, the description in the contract was followed, thus apparently disregarding and abandoning any parol agreement that may have been made to the contrary. We think the court did not err in declining to submit the question of practical location to the jury. Assuming it was so located, it did not give title to Sutton or the defendant. There is no question of estoppel in the case. The defendant offered to show by a witness that in the year 1847 he heard a conversation between Micah White and Sutton, whereby it was agreed that the boundary line between the lot occupied by Sutton and the lot known as the "Gregory lot" should be on the height of ground as it was run up to the north line of lot No. 4. This, being objected to, was excluded. If the views above stated in regard to similar and stronger evidence on the subject of practical location are correct, then it follows that this ruling was correct. It is further suggested that the plaintiff had not such a possession of the real estate as would authorize him to maintain replevin for the logs. Having the title, he had constructive possession, and that was sufficient, (*Johnson* v. *Elwood*, 53 N. Y. 433,) in view of the fact that the acts of defendant were not of such a character as to furnish a basis for adverse possession. There is no other question that calls for consideration. It follows that the judgment should be affirmed. Judgment affirmed, with costs.