## BARNES et al., Appellants, v. ALLISON et al.

**Division Two, December 17, 1901.**

Ejectment: AGREED BOUNDARY LINE: STATUTE OF FRAUDS. To settle the uncertain and unmarked division line between two adjoining owners of land, they mutually agreed that a surveyor should mark out the line between them, which he did, and from that time to the death of one of them they accepted this as the division line. Each fenced on it and cultivated up to it, without reference to whether it was the true line or not. *Held*, that such boundary thus agreed upon must be conceded to be the true one, for them, and for their succeeding owners, and each must be considered the owner of the land up to that line. Nor does the statute of frauds apply to such cases. And where the fence was carelessly deflected from this agreed line at one end to accommodate itself to a creek, the agreed line, nevertheless, and not the creek or fence, constituted their boundaries.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED.

*Fry & Clay* for appellants.

(1) When two adjoining proprietors agree what shall be the division line and use and occupy up to such marked line for a sufficient length of time, sufficient to show the understanding and intention of the parties, it is binding on the parties and their subsequent grantees. Such use and occupancy shall be deemed and considered evidence that such line was agreed to be the division by and between the owners, and the burden is on the opposite party to prove the contrary. Blair v. Smith, 16 Mo. 273; Brummell v. Harris, 148 Mo. 430; Hedges v. Pollard, 149 Mo. 216; Atchison v. Pease, 96 Mo. 566; Jacobs v. Moseley, 91 Mo. 457; Krider v. Miller, 99

Mo. 145; Schad v. Sharp, 95 Mo. 573. (2) The plaintiffs and their grantors had been in open, notorious, continuous and visible possession of the land for more than ten years before defendants forcibly took possession and moved the fence. They occupied and claimed the land to the Jackson survey and no one questioned it until the defendants became the owners north of the line. Under this state of facts, defendants became the owners against the world, whether there was an agreement as to the line or not, and whether defendants had proper title or not. Flyn v. Wacker, 151 Mo. 553; Atchison v. Pease, supra; Golterman v. Schiermeyer, 111 Mo. 418; Brummell v. Harris, 148 Mo. 442; Hedges v. Pollard, 149 Mo. 225. (3) If plaintiffs did make contradictory statements when defendants had McKinney make his survey, they being contrary to plaintiffs' actions in forbidding and protesting against the fence being moved and the institution of this suit for the land when forcibly taken, are of little force. "Conflicting testimony as to vague or uncertain conversations occurring after the rights of the party in possession had been fixed by possession and limitations, is not sufficient to reduce the character of the possession or to divest rights so acquired." Hedges v. Pollard, 149 Mo. 224. (4) The trial court, in its opinion, admits plaintiffs are entitled by limitations to the land at the "west end" of fence, but claims the east end of fence was not maintained on the Jackson survey. It is clear, under the evidence, the east end of the fence was changed south because of the creek and the lay of the land. In a like case this court held: "But the evidence tends to show that that resulted from a rather careless yielding of the parties, including plaintiffs and defendants, to the physical conditions of the land, than from a purpose to change the line." Brummell v. Harris, 148 Mo. 445. (5) The trial court admits plaintiffs had acquired a portion of the land sued for, by limitations, but claims the evidence did not definitely locate and fix such part

Vol 166 mo—7

and no intelligent verdict could be rendered on the testimony. This was erroneous. Witness McKinney definitely described the land south of the fence and north of his survey. The case was tried to the court, and under the evidence it could have framed an intelligent verdict. A verdict for the plaintiffs without describing the land is sufficient. Lemon v. Hartsook, 80 Mo. 21. A finding sufficiently definite could clearly have been made. Crawford v. Ahrnes, 103 Mo. 88; Meier v. Meier, 105 Mo. 433; Robertson v. Drane, 100 Mo. 273; Franklin v. Haynes, 139 Mo. 311.

*T. S. Carter* and *Robertson & Barnes* for respondents.

(1) The appellants are in error in claiming that the original proprietors of these two quarter sections had agreed upon a division line. The only proof upon that subject was given by T. P. Vance and that is insufficient to show an agreed line. Besides, not only the evidence of Vance, but that of all of the other witnesses shows that the east end of the fence never was put upon any line, and there is no evidence in the case to show where that part of the fence ever was placed till the new fence was made in 1889 by Hayth as the tenant of Hutton. Plaintiffs have no paper title to any part of the northwest quarter, and in order to recover they must establish their claim solely upon the ground of adverse possession for ten years. The land in controversy is in the northwest quarter, and not in the southwest quarter, and plaintiffs and their predecessors had possession of a part of it only eight years prior to the commencement of this action. The testimony, however, shows that plaintiffs and their predecessors only claimed to the true line, wherever that might be, and never did lay any claim to any land in the northwest quarter, and only claimed the land because they thought it to be in the southwest quarter and included in their deeds. The possession of plaintiffs and their predecessors was not adverse. When a

proprietor of land, through a mistake or ignorance of the true location of the lines separating his tract from that of an adjoining proprietor and without an intention to claim beyond the true line of separation, extends his fence beyond such line and incloses a portion of the land of such adjoining proprietor, the possession thus acquired will not be adverse. St. Louis University v. McCune, 28 Mo. 481; Houx v. Batteen, 68 Mo. 84; Hackshorn v. Hartwig, 81 Mo. 648; Keen v. Schnedler, 92 Mo. 516; Skinker v. Haagsma, 99 Mo. 208; Kienze v. Evans, 107 Mo. 487; Adkins v. Tomlinson, 121 Mo. 487; McWilliams v. Samuel, 123 Mo. 659; Ernsting v. Gleason, 137 Mo. 594; Majors v. Rice, 57 Mo. 384; Hamilton v. West, 63 Mo. 93; Knowlton v. Smith, 36 Mo. 507. (2) The plaintiffs rely upon possession to establish their title. The west part of the fence was upon the Jackson line; the east part fluctuated, and the evidence does not disclose that it was ever upon the Jackson survey line till 1889. Before that time it is not disclosed where the east part of the fence was. The evidence, therefore, fails to establish the limits of the land sought to be recovered. There is nothing to fix the boundaries of the land in the possession of plaintiffs and their predecessors for a period of ten years preceding the commencement of this action or prior to defendants' possession. In the case of Hughes v. Israel, 73 Mo. 548, the court, as to this very point, used the following language: "As to the sufficiency and efficiency of the proof of possession, in this case, if it could be held to have been without color of title, we understand the law to be that the proof must be sufficiently definite and certain to locate and identify in some way the lands so possessed with such metes and bounds as can be ascertained and recognized. Otherwise, the proof would be void for uncertainty. Where there is no color of title the party so claiming is limited to his actual inclosure." The proof in the case at bar, as in the case cited, fails to establish the plaintiffs' actual inclosure. The case of Crawford v. Ahrnes, 103 Mo. 88, and other cases cited by the

appellants under their fifth point, do not in any way tend to establish a rule contrary to the case here cited. The rule is, that a finding for the plaintiffs is sufficient if the officer, when executing his writ of possession, can determine what land to deliver to plaintiffs. Who can say where the officer would make his north boundary of this piece of land?

GANTT, J.—This is an action of ejectment for a strip of land situated in Audrain county, to-wit, nine acres off of the north end of the southwest quarter, and nine acres off of the south end of the northwest quarter of section 21, township 52, range 12, west. Ouster laid as of April 12, 1898.

The answer is a general denial.

The cause was tried to the court without the intervention of a jury, and a judgment for defendant.

No instructions were given for defendant.

For the plaintiff the court gave the following declaration of law:

"9. The court declares the law to be that if the Jackson survey, run in the year 1855, or thereabouts, was a correct survey, and properly divided the west half of section 21 into two quarter sections according to the United States Government survey and field notes, then the verdict should be for the plaintiffs."

Plaintiffs have a paper title to the southwest quarter of section 21 and defendants have the paper title to the northwest quarter. The dispute arose over the correct line dividing the two quarter sections.

Plaintiffs claim that what is known in the record as the Jackson line was the true line and if it had been they would be entitled to recover, but if the Jackson line was not the true line, they seek to recover on it as an agreed line, and by adverse possession.

In 1855, a surveyor named Jackson bisected the west half of this section by running a line due east from the quarter

section corner on the west line of the section, and gave that to the proprietors north and south of the line as the true line. Then at the center of the section he dropped south 2.5 chains, ran angling to the quarter section corner on the east side of the section. The east half of the section is now and has always been occupied in accordance with the Government survey.

The following plat shows the true lines and corners of section 21, as made by the United States Government:

Jesse Vance was the first occupant of any part of the southwest quarter, and Peyton Mahan the northwest quarter. From Jesse Vance it passed to James Vance; from James Vance to Hopkins and Ricketts; and from Hopkins and Ricketts to Smith, and from him to the Barneses, the plaintiffs.

While the petition counts upon an ouster of nine acres in the southwest quarter, the evidence shows that the land plaintiffs seek to recover is in the northwest quarter, and while plaintiffs describe it as nine acres or a strip 40 chains east and

west by 2.25 chains north and south, their proofs tended to show they were seeking to recover a wedge-shaped piece beginning at the quarter section corner in the west line of section 21, thence *due east* to the division line running north and south through the section, thence south 4.5 chains to the center of the section, thence west bearing north on the McKinney line to the point of beginning.

I.    It is obvious that plaintiffs have neither a good paper title nor color of title to any part of the northwest quarter in which this wedge-shaped piece lies.

II.    But conceding that the Jackson survey was erroneous in that he ran his line due east instead of subdividing the section by observing the original Government corners, plaintiffs insist that as that line was run in 1855 at the mutual request of the then owners, Jesse Vance, who owned the southwest quarter, and Peyton Mahan who owned the northwest quarter, to fix an uncertain boundary between them, and as Jesse Vance and Peyton Mahan built their fences on this line and maintained a partition fence thereon until 1874, or until the death of Jesse Vance, and as Jesse Vance occupied and cultivated all the land south of that line and during all that time claimed it as his own, and as those who succeeded to his title continued his possession up to the time defendant set his fence south and took in the wedge-shaped parcel, the title to this wedge-shaped tract became vested in said Jesse Vance and plaintiffs by virtue of an agreed line, and also by force of the statute of limitations.    Whereas, defendants insist there was no sufficient evidence of an agreed line, and insist that the evidence shows that the east end of the fence was never placed on the Jackson line until placed thereon by Hayth as the tenant of Hutton in 1889, less than ten years before the commencement of this suit.    Defendants further insist that Vance and those who claim under him only claimed to the *true line,* wherever it might be, and, hence, their possession was not adverse.

Barnes v. Allison.

The trial court refused all of plaintiffs' declarations of law except the ninth hereinbefore set out, and gave judgment for the defendants and assigned his reasons therefor as follows:

"At this time it was believed by all parties that the Jackson survey marked the true line between the northwest and the southwest quarters, and if the parties had built their fence on that line and held possession of their respective inclosures for the requisite period, claiming and holding adversely, a good title would have been conferred by the statute of limitations.    But while the 'west part' of the fence was always stationary and on or near the Jackson survey, the east part varied and was never put on the Jackson survey till '89 or '90 or '91. The evidence does not disclose what portion of the 'west part' always remained the same or what portion of the east part of the fence fluctuated.    Where a party in ejectment relies upon mere possession, his evidence must distinctly show the limits of his possession.    Although plaintiff might be entitled to recover that part of the northwest quarter south of the 'west part' of his original fence, yet there is no evidence definitely locating and fixing such part.    No intelligent verdict could be rendered on this testimony."

It must be borne in mind that the claim of title to the tract in controversy by virtue of an agreed line is one thing, and the claim by adverse possession is another and distinct thing, in the contemplation of the law.

As early as the case of Blair v. Smith, 16 Mo. 273, it was laid down by this court, that it was "competent for two such (adjoining) proprietors to agree what shall be the division line; and when using and occupying up to such a marked line as this, such use and occupancy shall be considered and deemed evidence that such line was agreed to be the dividing line by and between the owners.    They own adjacent lots—contiguous lots; they agree that such a marked line shall be the dividing line between the lots which they own; and they use and occupy the respective lots up to this line, not for twenty years, not for

fifteen years, but for a length of time sufficient to show the understanding and the intention of themselves—to show that they know their own boundary, that they are content with their own boundary. . . . . They use and possess and occupy their respective lots to this mark. Now, this use and occupancy, for a time long enough for men to show that they know the boundary between their lands, shall be considered binding and conclusive as to such boundary, as well as of such understanding or agreement between them. They shall not, after a lapse of years, longer or shorter, as the circumstances may tend to show their agreement or settlement, or the fixing of their common boundary, be permitted afterwards to dispute it. Such boundary thus agreed upon shall be considered the true one; and each one considered as the owner of the land mentioned in his deed thus marked out to that boundary between them."

This decision has been repeatedly approved since that time. [Turner v. Baker, 64 Mo. 218; Krider v. Milner, 99 Mo. 145; Jacobs v. Moseley, 91 Mo. 457; Schad v. Sharp, 95 Mo. 573; Atchison v. Pease, 96 Mo. 566; Brummell v. Harris, 148 Mo. 441.]

And it was ruled in these cases, following Taylor v. Zepp, 14 Mo. 482, that the statute of frauds does not apply to such cases. The rule thus established is confined to disputed or uncertain boundaries, when the line is agreed upon.

Now the evidence unquestionably shows that, owing to a controversy about his east line, whereby Vance lost some ten acres that he claimed, he and Mahan to settle the uncertain and up-to-that-time unmarked line between them, mutually agreed that Jackson a surveyor, should mark out the dividing line between them. That he did so and that from 1855 until Vance's death, he and Mahan accepted this as the division line. Each fenced on it and cultivated up to it, without reference to whether it was the true line. It was as to them an agreed line. It would be difficult to find more satisfactory evidence

of an agreed line between two neighbors, each disposed to do right by the other.

We can not agree with counsel for the defendant that there was no evidence of an agreed line. Neither can we agree with the learned circuit court that there was no sufficient evidence, upon which to base an intelligent verdict.

It is insisted by counsel for defendant that there is no evidence that the fence was ever built on the east end of the line run by Jackson, and the circuit court says, "While the *west* part of the fence was always stationary and on or near the Jackson survey, the east part varied and was never on the Jackson survey till '89 or '90 or '91." But F. P. Vance testified that he was present when the Jackson survey was made; that his father, Jesse Vance, and Peyton Mahan, were both present; that there was a creek at the east end. Jackson surveyed the whole line from the quarter section corner on the west line of the section to the center line north and south. F. P. Vance testifies that "they built their fences on the Jackson survey" not merely on the west line. It is true, there was a creek on the east end for about one hundred yards, and they may not have put the fence exactly on the line there on account of the creek, and that it may not have been built exactly on the line on the east until Hutton subsequently built there, but the fence deflected at this point only to accommodate itself to the creek.

We think the evidence was ample to have enabled the court to have found that the Jackson survey was an agreed line, not merely on the west, where all parties and the court agree that the fence continued on the Jackson survey where it was first placed in 1855, but up to the center line of the section north and south notwithstanding the careless yielding to the creek at the east corner. The line was agreed on, and that, not the fence, constituted the boundary. [Brummell v. Harris, 148 Mo. 446.]

III. There was no evidence, so far as we can discern, that Vance and his grantees were claiming only to the true

line, wherever it might be.  The evidence was that each claimed to the line on his own side of the Jackson line fence as against all comers.   There is nothing in the circumstances of the McKinney survey to estop plaintiffs from claiming the land up to the Jackson line.   As the declarations of law numbered 4, 7, and 8 offered by plaintiffs were improperly refused, the judgment must be reversed, and the cause remanded for a new trial in accordance with the views herein expressed, with leave to plaintiffs to amend their petition if they see fit to describe the lands, withheld by defendants, up to the Jackson survey line.   All concur.