## J. W. MAYNOR et al. v. TYLER LAND & TIMBER COMPANY, Appellant.

**Division Two, July 15, 1911.**

1. **SUIT TO QUIET TITLE: Title Necessary to Succeed.** A suit to quiet title is a special statutory action to adjudge the respective "estate, title and interest" of several claimants to land. It is not necessary therein that plaintiff's title be good against the world, but only against the defendant.

2. **————: Sheriff's Deed: Presumptions.** A recital from Carleton's Abstracts of a sheriff's deed which mentions no names of parties to the tax suit on which the sale was based (saying only "R. O. Maynor land"), can give rise to none of the statutory presumptions from sheriffs' deeds as to the owners of the land or as to transfers of title.

3. ———: ———: **Parties.** Defendant in a suit to quiet title
to land recognized Richard O. Maynor as the common source
of title, and claimed to have acquired that title by sale of the
land for taxes in 1880. His only evidence to support this con-
tention was an entry from Carleton's Abstracts reciting a
sheriff's deed, dated March 10, 1880, to John W. King, —
"R. O. Maynor land" — which mentioned no parties to the
tax suit. R. O. Maynor died in 1876. *Held,* that defendant
has deraigned no title from R. O. Maynor, the common source
of title set up by the parties, and can have no affirmative relief.

4. ———: **Next of Kin: Evidence.** Plaintiffs in this suit to
quiet title were the children and wife of the brother of R.
O. Maynor, the common source of title. R. O. Maynor, his wife
and two male children were dead without issue. A daughter
survived them, and there was evidence tending to show her
disappearance for fourteen years and that no tidings of her or
her marriage were received in answer to the inquiries of her
family. Therefore, since there was no evidence that she was
ever married or left any maternal relatives, the inference was
admissible that these plaintiffs were part, if not all, of her
next of kin and heirs. It is *held* that the decree may well go
against defendant, who has shown no right or title to the land.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C.
Riley,* Judge.

AFFIRMED.

*Faris & Oliver* for appellant.

(1) (a) Plaintiffs had counted upon a fee sim-
ple estate, and they allege in their petition that they
have such estate. Having so alleged they must prove
this title or fail. Stewart v. Land Co., 200 Mo. 281;
Phillips v. Trust Co., 214 Mo. 669. (b) There was no
proof as to whether Richard Maynor died testate or
intestate. But the presumption will, of course, pre-
vail that he died intestate in the absence of proof.
The law presumes that Richard had a father and a
mother, or kindred in the ascending line. Samford
v. Toolving, 15 La. 170; Miller v. McElvee, 12 La.
476. The proof shows he had a sister and a brother-
in-law—Otto Smith and Bettie. (c) The proof con-
clusively showed, for it is sworn to by plaintiff, Eliza-
beth Maynor, that Richard died leaving one daughter,

Lovey Ann, and one son surviving him. Before these plaintiffs, who are collateral kin, can inherit, they must show "that there are no persons in existence more nearly connected with decedent than themselves." Chandler v. Bailey, 89 Mo. 641; Bates v. Shraeder, 13 Johns. 260; Anson v. Stein, 6 Iowa 150; Emerson v. White, 29 N. H. 482; Payne v. Payne, 29 Vt. 172; 4 Ency. of Ev. 577; Merrill v. Otis, 12 N. H. 466; Skinner v. Fulton, 39 Ill. 484. It has been well said that "plaintiffs must remove every possibility of title in another before they can recover." Bonning v. Griffin, 15 East 293. (d) If all of plaintiffs' testimony be regarded as competent and accepted at its full face value, it falls far short of showing that plaintiffs are all of the heirs of Lovey Ann or of Richard O. Maynor. To hold that they are, and to hold that they are entitled to the whole of the land in controversy, as was done in this case, is but to guess away the property and rights of the defendant. Sarenson v. Sarenson, 94 N. W. 540; Univ. v. Harrison, 90 N. C. 385. Besides, it is universally held that "when an alleged heir delays for a long time to assert a claim to decedent's estate, the delay, if unexcused, casts a cloud in determining the heirship." 4 Ency. of Evi. 578; Bruce v. Patterson, 102 Iowa 184. 2. The plaintiffs have not shown even the death of Lovey Ann. Under the facts detailed by plaintiffs, no presumption as to the death of Lovey Ann will obtain, whether she has been in Tennessee seven years or seventy-seven years. Doe v. Stackley, 6 Houst. 447; Martin v. Royse, 21 Ky. L. R. 775; Burnett v. Castello, 15 S. D. 89; Ross v. Blount, 25 Tex. App. 344; Latham v. Tomb, 73 S. W. 1060; 4 Ency. of Ev. 44, 45. The law will not presume death if the circumstances permit of any reasonable inference of continued life. Winter v. K. of P., 96 Mo. App. 1. Not only must plaintiffs kill off Lovey Ann, but they must kill off all of Lovey Ann's kin on her mother's side, even to the remotest

generation—back to Adam—before they can take the whole of this land.

*Duncan & Bragg* and *Shepard & Shepard* for respondent.

(1) Record title being shown in Richard O. Maynor, as well as a common source of title, the question there to be determined is, which of the parties litigant have made the best showing of interest in and to the land in question, for it is the right, title and interest of the parties plaintiff and defendant that the court is called to pass upon. Graton v. Land Co., 189 Mo. 322; Felker v. Breece, 226 Mo. 320; Gage v. Cantwell, 191 Mo. 698. The whole question before the trial court, and of course before this court, was which of the parties to this cause of action showed the greater interest in the land in question. The trial court gave the matter due consideration and after fully considering the matter it decided that, as between the parties to this suit, the plaintiff showed the greater title, and rendered judgment accordingly, and we submit that appellant has shown no reason for the reversal of the finding of the court in this case. Should it be that the daughter, Lovey Ann, is living, or should it be that she has other relatives entitled to the land in question, or any part thereof, then such parties would have the right to assert their interest against plaintiff, but such interest cannot be asserted by a stranger, and especially in this case when all the evidence and surrounding circumstances show these plaintiffs are the only heirs of Richard O. Maynor that can inherit this property, and a reversal of this judgment would be a gift by this court to the defendant. (2) The evidence in this case clearly shows that Lovey Ann, the only surviving member of Richard O. Maynor's family, left Missouri more than fourteen years prior to the date of the trial of this cause, and had not been heard of since the date of her departure from the State

except it was heard she had died in Tennessee. It is true this report is not shown to be made by a member of the family, but it is also shown that continuous and diligent inquiry was made for her, and no report beyond the report that she was dead could be had. This being the case, even was there no report of her death her long absence unheard of by those who were seeking to find her and had an interest in her whereabouts would raise the presumption of her death. Chapman v. Kullman, 191 Mo. 237; Flood v. Growney, 126 Mo. 262; Gilroy v. Brady, 195 Mo. 205; Bradley v. M. W. A., 124 S. W. 69.    (3)  The only evidence that Lovey Ann was ever married and had issue surviving her was the purely hearsay testimony of the witness Higgs, and it was entirely insufficient to justify the court in finding she was ever married.

BOND, C.—This action to quiet title to 160 acres of land was brought in the circuit court of Pemiscot county on the 12th of October, 1905.

Plaintiff introduced in evidence certain entries contained in Carleton's Abstract (Laws 1901, p. 251), showing the land sued for to be well vested, in 1858, in Richard O. Maynor, under patents from the United States and grants from the State of Missouri and Pemiscot county, Missouri.   Plaintiff adduced evidence tending to show that Richard O. Maynor died in 1876, leaving a wife and female child, Lovey Ann, living at the time of his death, and another male child, born shortly after his death; that the posthumous child died during infancy; that the wife of Richard O. Maynor was also the mother of a boy, named Harvey L. Pinkston, born of a former marriage; that at the death of Richard O. Maynor, his daughter, Lovey Ann, was about five or six years old; that Harvey Pinkston, his stepson, was about fourteen years old, and was about eighteen years old when he was afterwards killed; that Richard O. Maynor's wife died

sometime after the death of her husband without having remarried; that his surviving daughter, Lovey Ann, went to Tennessee. As to what became of her thereafter was shown, as far as may be, by the testimony of Mrs. Elizabeth Maynor, the widow of Luke Maynor, who was a brother of Richard O. Maynor. She testified that on the day of the trial, to-wit, August, 1907, she had not been able to receive any tidings of Lovey Ann for fourteen years; that she had been told that Lovey Ann was dead; that she did not think Lovey Ann was married at the time of her death, but she could not answer as to that of her own knowledge. "Q. Where was she the last time you heard of her. A. She was over in Tennessee. I can't tell you the exact place. I believe it was Big Sandy, Tennessee. I am not certain, but I believe it was. I as a member of the family have been making inquiry about her during the past fourteen years, from places I heard she formerly resided in Tennessee. I have not been able to find anything of her whereabouts at all. I haven't heard any more of her from that time to this. . . . Q. After Lovey Ann Maynor left Dunklin county and went to Tennessee you have never been able to get any further trace of her? A. No, sir."

This witness further testified that she had been told by the person who informed her of Harvey Pinkston's death that he had never been married.

Plaintiffs in this case are the widow and children of Luke Maynor, deceased, the brother of Richard O. Maynor, deceased.

The defendant corporation bases its title to the land upon entry No. 18 from Carleton's Abstract, to-wit: "Pemiscot county, relator, to John W. King, sheriff's deed, dated March 10, 1880, and filed and recorded July 10, 1880, Book 'G,' page 23. Consideration, $85. Acknowledgment regular. The above deed conveys the northeast quarter of section 20, township 16, range 12, east, containing 120 acres. (Note: Carle-

ton's Abstract says: 'Sold by Benjamin F. Bancroft, sheriff.' Also under column of remarks says: 'R. O. Maynor land.')"

Defendant also showed other deeds following the above entry purporting to convey the property and ending with a deed to defendant on the 27th of May, 1905.

The court admitted these offerings over the objections and exceptions of the plaintiffs, except as to the above entry from Carleton's Abstract referring to a sheriff's deed, which it allowed to be read subject to plaintiff's objection. The court rendered a decree quieting plaintiffs' titles against the defendant, from which it appealed.

I. A suit to quiet title is a special statutory action to adjudge the respective "estate, title and interest" of several claimants to land. [R. S. 1909, sec. 2535; Gage v. Cantwell, 191 Mo. 698; Graton v. Lumber Co., 189 Mo. 322; Huff v. Land & Imp. Co., 157 Mo. 65.]

A fundamental difference between such action and one in ejectment is, that it is never necessary to the former that the title of the plaintiff should be good against the world but only against the defendant; while in ejectment (in the absence of common ancestor) plaintiff can only get possession by showing an estate in fee. [Felker v. Breece, 226 Mo. 320.]

In the case at bar the fee simple title to the lands was in Richard O. Maynor, and at his death, intestate, was cast upon his heirs-at-law. The defendant recognizes Richard O. Maynor as the common source of title, and claims to have acquired that title by sale of the land for taxes in 1880. The only evidence adduced by defendant to support this contention is "Entry No. 18 on Carleton's Abstract of titles, reciting a sheriff's deed, dated March 10, 1880, to John W. King —R. O. Maynor land." This recital of the abstract

books affords no basis whatever for the statutory presumption based upon a sheriff's deed to the purchaser at a tax sale. [R. S 1909, secs. 6346 and 11501.]

The presumption authorized by the terms of the first of the above sections of the statute is, "that the persons named in the sheriff's deed, as defendants in the suit" for taxes, were the owners of the land, and that this fact is prima facie shown by the sheriff's deed, which second statute makes prima facie evidence of the transfer of the title of the defendants in the tax suit. [Powell v. Greenstreet, 95 Mo. 13; Cooper v. Gunter, 215 Mo. 1. c. 565.]

In the abstract entry introduced by defendant in lieu of sheriff's deed, there is no mention of any persons as parties to the tax suit. The only reference to any one is the statement in said entry, to-wit, "R. O. Maynor land."

In this state of the record, and in view of the fact that R. O. Maynor had died in 1876 (wherefore if he were the only party mentioned in the sheriff's deed as being defendant in the tax suit, it was void), it is plain that the entry in question affords no basis to support the presumption that the tax sale was valid or that the sheriff's deed divested the heirs of J. O. Maynor of the estate left to them at his death in 1876. We think no other conclusion can be drawn from the meager recitals of the abstract than that the tax proceedings therein referred to and the sheriff's deed based thereon, were inoperative to vest any title in the grantee, for the reason that the owner of the land had died four years before, and there is no evidence whatever that his heirs were ever made parties to the cause. The result is that the defendant has deraigned no title from R. O. Maynor, the common source of title set up by the parties to this cause. Clearly, therefore, defendant was not entitled to any affirmative relief in the trial court, and can have none here.

II. The next question is, whether the plaintiffs have shown themselves entitled to relief claimed against defendant. As the record shows defendant acquired no title whatever to this land from R. O. Maynor, it is sufficient to show that the plaintiffs acquired some title from said Maynor in order to warrant a decree exempting that title from any attack by defendant. Under the testimony given for plaintiffs, there was inferential evidence which warranted the court in finding that the plaintiffs, who were the children and wife of the brother of Richard O. Maynor, upon his death and after the death of his wife and two male children without issue, were the next of kin of Lovey Ann, who survived her mother and brothers; and since there was evidence tending to show the disappearance of Lovey Ann for fourteen years, and no tidings of her or her marriage were received in answer to the inquiries of her family, and since there was no evidence that she was ever married or left any maternal relatives, the inference was admissible that these plaintiffs were a part, if not all, of her next of kin and heirs. This was doubtless the view of the trial court. The decree of the court does not prejudice any possible heirs of Lovey Ann on her mother's side since they are not parties to this cause, and the decree may well go against defendant who has shown no right or title to the land. As contrasted with the claim of defendant resting on no valid ground, plaintiffs have the better title, for, under the evidence, they are inferably entitled to some interest in the land. The defendant has none. The decree in this case only precludes the defendant. To that extent it is manifestly right, and is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing report of the commissioner is hereby adopted as the opinion of the court.