**GILLENWATERS BUILDING COMPANY,**
a Corporation, Appellant,

v.

**Caleb Lee LIPSCOMB and Ellen Marie
Lipscomb, husband and wife,
Respondents.**

No. 56036.

Supreme Court of Missouri,
Division No. 2.

June 12, 1972.

Motion for Rehearing or for Transfer to
Court En Banc Denied July 17, 1972.

Keith V. Williams, Mayte B. Hardie,
Springfield, for appellant.

James K. Prewitt, Prewitt, Jones, Wilson
& Karchmer, Springfield, for respondents.

HENRY I. EAGER, Special Commissioner.

This is an action by the holder of the record title to quiet its title to lot 4 and the north 19.6 feet of lot 5, Block "I" in the Amended Plat of Brentwood Estates in Springfield. Defendants answered, stating that they were the owners of the north 19.-6 feet of lot 5, and they filed a counterclaim asking that title thereto be quieted in them. The issues at trial involved only

that 19.6 feet and the petition was orally amended. We are required to take jurisdiction because title to real estate is involved and the transcript was filed before January 1, 1972.

Lot 4 lies north of lot 5. The addition had obviously been surveyed when it was laid out; the plat had been filed. Plaintiff received its title to lot 4 and the north 19.6 feet of lot 5 from Gillenwaters & Company, a corporation, by deed of September 19, 1969. The latter had received title to much of the addition from various members of the Gillenwaters family by deed of May 13, 1957. By deed of December 21, 1959, Gillenwaters & Company conveyed to E. Howard Esterle and wife all of lot 5 except the north 19.6 feet thereof, and certain other land adjoining lot 5 on the east which is not involved here. By deed of December 31, 1959, the Esterles conveyed the same property to the defendants. A title opinion, in evidence as an exhibit and written for a Savings & Loan Association on May 20, 1960, covered the same property. The only definite evidence regarding the officers of Gillenwaters & Company was that J. D. Gillenwaters was President, and O. T. Gillenwaters was Secretary at the time of trial, but how far back that status extended is not shown.

In 1959 Mr. Esterle, who was a builder, proposed to build a house for defendants, apparently upon a plan presented by Mr. Esterle, and upon a lot to be selected. The defendants had in mind the lot in question (which was later conveyed to them) and also one somewhere else. Defendant Lipscomb testified, in substance: that he viewed the lot and was shown "the general property line"; that later Esterle called him, they went again to the lot, and met Mr. O. T. Gillenwaters there; that Esterle had staked out defendants' house and "it was too big to go on the lot" and "there was no way to fit the house * * * on the lot"; that "Mr. Gillenwaters, rather than to lose the sale, said: 'I'll just give you some more land off the lot to the north of me'", and with "this agreement

we proceeded." Mr. Lipscomb further testified: that he "was to get" a wedge-shaped piece of ground 38 feet wide at the front and tapering to a point at the back (which does not in any sense fit the 19.6 foot strip claimed here); that he asked Mr. Gillenwaters to stake the piece off, and that he did it or had it done; that when his house was built they took possession of the wedge-shaped strip, put a hedge along it, planted and mowed grass, planted shrubbery, and in general treated it as a part of their lot; that the grass, etc., on the lot to the north was high and unkempt. Some years later, and probably about 1965, plaintiff or Gillenwaters & Company staked out a house on the lot to the north and, according to defendant Lipscomb, violent discussions ensued between him and J. D. Gillenwaters as to the ownership of the strip or that part of it which defendants had been using. At that time, according to Mr. Gillenwaters, Lipscomb "inquired to buy the property." Nothing was done for a time. Eventually plaintiff started to put in a chain link fence, someone took out the posts, and this action was filed. A photograph of the line of posts, reconstructed more or less, was admitted to show where defendant thought that plaintiff claimed the line to be. It is extremely difficult to describe from this record precisely where the respective lines lie but, according to Lipscomb's testimony, the line of the property *as conveyed to him*, would come within one foot of an extension of his porch, which plaintiff's counsel frequently referred to as a retaining wall; it is also said to pass through the branches of a tree of the defendants. A house has been built on the property north of defendants, and sold. Defendant Lipscomb necessarily admitted that his deed, his deed of trust, the title opinion and a second deed of trust all excluded the 19.6 feet. When we refer to "defendant" we are indicating Mr. Lipscomb.

Mr. Esterle and O. T. Gillenwaters expressly denied any and all conversations about giving defendants more land and Es-

terle had no recollection of meeting defendant and Gillenwaters at the lot. This, of course, cannot restrict the effect of defendants' testimony in considering whether they made a submissible case. J. D. Gillenwaters testified that their companies had always claimed this strip, and he produced tax receipts specifically covering it for the years 1962–1969, inclusive. There had been some grading or terracing across the strip when defendants built their house. Plaintiff is in the construction business; Gillenwaters & Company was evidently a family holding company. The hedge placed by defendants ran "cata-cornered" and was not on any "legal alignment."

Defendants do not claim by adverse possession; in fact, their total occupancy to the filing of suit was for less than ten years. Their theory was that they had acquired title by an oral agreement between adjoining owners upon a boundary line, and acquiescence. The trial court submitted plaintiff's case to the jury upon an instruction hypothesizing that it was the owner and entitled to possession, unless if found for defendants upon another instruction hypothesizing (1) "an uncertain and disputed boundary line," (2) an agreement between defendants and plaintiff's predecessor on the line, and (3) a taking of possession. Defendants' counterclaim was also submitted upon those three elements. The jury found "the issues in favor of defendants and against the plaintiff," making no distinction between plaintiff's petition and defendants' counterclaim. The Court had, during trial, expressed doubt as to the applicability of defendants' theory and cases to the situation presented. However, it entered a judgment in favor of defendants and against plaintiff on plaintiff's petition and on defendants' counterclaim and adjudged that defendants were the owners in fee simple of the disputed tract, namely, 19.6 feet as described; also, that plaintiff had no interest therein and was enjoined from claiming any right or interest. The motion for judgment or a new trial was overruled by lapse of time.

■ Defendants first contend here that plaintiff failed to preserve in its after-trial motion either of the points it raises on this appeal. These are: (1) that the trial court should have directed a verdict for plaintiff or sustained its after-trial motion for judgment because defendants did not make a submissible case that a boundary dispute existed which had been settled by agreement; (2) that the two instructions given for defendants on the merits were not supported by the evidence, and did not sufficiently identify the alleged agreed line. In plaintiff's motion it was alleged: that defendants failed to plead or prove a claim upon which relief could be granted or a defense to plaintiff's claim; that the Court erred in denying plaintiff's motion for directed verdict; that the defense had, over objection, converted the proof from the legal issues raised by the pleadings into "alleged" equitable issues, and that the verdict of the jury on such equitable issues was not binding on the court. The motion contained many other allegations, with some concerning defendants' main instructions; these included one that those instructions submitted issues not pleaded *"nor proven."*

In essence, the sole issue here is whether the evidence of defendants was sufficient to create a submissible defense to plaintiff's action based on its record title and whether it was sufficient to justify submission of defendants' counterclaim to quiet title. We hold that the allegations of plaintiff's after-trial motion were sufficient to call the trial court's attention to these decisive questions. We have been rather liberal in considering assignments raising the sufficiency of the evidence, and particularly where such was a pervading issue at the trial. The point on the instructions stands or falls on the sufficiency of defendants' evidence. The contention of a deficiency in plaintiff's motion is denied.

It has been held several times in Missouri and frequently elsewhere: that an uncertain or disputed boundary line may be fixed by agreement, written or oral, with possession taken accordingly and continuing; that such an agreement does not pass title, but merely fixes what each party owns; that any such agreement must be made with reference to an *uncertain or disputed line* and the parties cannot thus establish a line which they know is not the true line, for that would constitute a passing of title which can only be done by formal conveyance; that if there is no uncertainty as to the true line, or if one or both know that the agreed line is not the true line, such an agreement is void under the statute of frauds. 12 Am.Jur.2d Boundaries §§ 77–79; 11 C.J.S. Boundaries § 67; 69 A.L.R. 1430, note; 113 A.L.R. 421, note; Goltermann v. Schiermeyer, 111 Mo. 404, 19 S.W. 484, 20 S.W. 161; Turner v. Baker, 64 Mo. 218; Barnes v. Allison, 166 Mo. 96, 65 S.W. 781; Klaar v. Lemperis, Mo., 303 S.W.2d 55; Grimes v. Armstrong, Mo., 304 S.W.2d 793; Quisenberry v. Stewart, Mo., 219 S.W. 625; Weeks v. Martin (SCNY), 10 N.Y.S. 656. The Missouri cases, beginning with Turner v. Baker, supra, emphasize that the principle is only applicable where there is a disputed or uncertain boundary, and in Turner, loc. cit. 64 Mo. 240, it was said that if the parties attempt " * * * for mutual convenience or other sufficient reason to transfer land from one to the other by a parol agreement, changing the location of such boundary, the statute of frauds will inflexibly apply."

■ Plaintiff's counsel recognize, as they must, the existence of the above principle but take the position that it does not apply here. We agree. Defendants rely largely upon the supposed acquiescence of plaintiff and its predecessors in their possession over a period of approximately nine years. The mere knowledge that defendants were using a small wedge-shaped part of the adjoining strip in the limited manner testified to by them, even if known, would constitute a rather doubtful acquiescence in a claim of *title*. The Gillenwaters insisted that they did not know of any claim of title for some years. Defendants cite: Martin v. Hays, Mo., 228 S.W. 741; Tillman v. Hutcherson, 348 Mo. 473, 154 S.W.2d 104; Jacobs v. Moseley, 91 Mo. 457, 4 S.W. 135; Ernsting v. Gleason, 137 Mo. 594, 39 S.W. 70; and Mothershead v. Milfeld, 361 Mo. 704, 236 S.W. 2d 343. We shall not attempt to discuss these cases individually. They emphasize the materiality of possession or acquiescence in an agreed boundary line, but when read in full context, it seems obvious that all of the supposed agreements were made concerning *uncertain or disputed* boundaries. In some, as Tillman, Jacobs, Ernsting, reference is expressly made to such situations; in Martin it is apparent that the boundary was uncertain. Whether we refer to it as "acquiescence" or not, no court, so far as we find, has ever held that a mere agreement upon a boundary different from the true and *known* boundary, coupled with possession, would ever ripen into title except by adverse possession. Some of these cases say that long acquiescence may be considered as evidence of a parol agreement upon a line fixed by the parties, but again we note that those cases are premised upon the existence in the first instance of an uncertain or disputed line; otherwise the courts would be permitting the transfer of real estate by parol agreement. Jacobs and Ernsting, supra, expressly state the rule as we did in the first instance in this opinion, i. e., as requiring an uncertain or disputed boundary line; the "acquiescence" may perhaps supply the lack of an express agreement, but *not* the necessity of an uncertain or disputed boundary. And it would hardly be permissible to let defendants rely upon a presumed agreement by "acquiescence" when they have testified to an express oral agreement, which proves insufficient. Some of the above cited cases also involved adverse possession. Defendants

had the burden of proving their affirmative defense as well as their counterclaim. Nichols v. Tallman, Mo., 189 S.W. 1184.

■ We look again to the facts of this case. There never was any dispute as to the boundary between lots 4 and 5, or concerning the north line of the property conveyed to defendants (lot 5 *except* the north 19.6 feet thereof, plus property not involved here). Defendants' agent, the builder Esterle, had no trouble in locating defendants' north line when he staked out the house and when he told defendants that it would not fit on the lot. That is Lipscomb's own testimony. A plat of this type and size could not be laid out and filed without a survey and the marking of lot corners. Indeed, the title opinion recited that a survey of the lot had been made as of December 16, 1959 (just before Esterle's purchase), with a copy shown in the abstract. Mr. Esterle confirmed the making of the survey. If defendants did not personally find the markers for the property they were buying it is immaterial, for the information was readily available and had been found and used. There was no uncertain line and there certainly was, at that time, no disputed line.

The most glaring deficiency in defendants' evidence is that there never was any agreement pretending to fix an uncertain or disputed line (actual or supposed). The only agreement Lipscomb testified to was that, in order that the sale might not be lost, Mr. Gillenwaters said: "I'll just give you some more land off the lot to the north * * *." That is the claimed agreement and it flies in the very teeth of the authorities which say that any oral agreement to change a known line or transfer additional land orally, is *void*. One simply cannot twist that supposed agreement so as to fit it into the decided cases.

We mention a few additional matters incidentally: it is not shown how Mr. O. T. Gillenwaters, whether President or Secretary of the owner corporation, would have had any authority to *give away* land, or even to fix a boundary, without corporate action; defendants' instructions submitted their case (both on plaintiff's petition and their counterclaim) on the hypothesis of a *disputed* boundary, whereas clearly there was no such; and the wedge-shaped tract which defendants say they occupied does not in any sense fit the dimensions of the 19.6 foot strip across the north end of lot 5, as claimed in the counterclaim.

■ Plaintiff and defendants claim under a common source of title, Gillenwaters & Company, although plaintiff took by deed and defendants, as to this strip, claim by oral agreement. Plaintiff only needed to trace its title back to the common source. Missouri State Life Ins. Co. v. Russ, Mo., 214 S.W. 860; Jones v. Himmelberger-Harrison Lumber Co., Mo., 223 S.W. 63. In order to quiet its title plaintiff need not establish an indefeasible title against the whole world but only that its title is good as against the defendants. Ritter v. Pattonville Consolidated School Dist. R–3, Mo., 318 S.W.2d 304; Maynor v. Tyler Land & Timber Co., 236 Mo. 722, 139 S.W. 393; Graton v. Holliday-Klotz Land & Lumber Co., 189 Mo. 322, 87 S.W. 37; Deal v. Lee, Mo., 235 S.W. 1053. It has done so and it is entitled to a judgment.

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment quieting title in plaintiff to the north 19.6 feet of Lot 5, Block I, in the Amended Plat of Brentwood Estates, in the City of Springfield, Greene County, Missouri, and judgment for plaintiff on defendants' counterclaim.

PER CURIAM:

The foregoing opinion of HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and PETERS, Special Judge, concur.