# JOHN H. DOLPHIN v. BERTHA KLANN, Appellant.

### Division Two, December 10, 1912.

1. **PLAT: Presumption.** Where a plat has been made and filed in accordance with Sec. 10290, R. S. 1909, describing all lots for sale, by numbers, and their precise length and width, the law presumes that the lots and streets were accurately surveyed and marked out on the ground as a basis for the plat.

2. ————: ————: **Internal Evidence.** Where a plat filed according to Sec. 10290, R. S. 1909, shows the curving course of a railroad marked thereon; where the lengths of the lines running east and west as boundaries of the lots are also marked; where the lots bordering on the railroad are irregular in shape and the lengths of their boundaries are marked accordingly; where an old hedge fence corresponds with one boundary of the land as called for by the distances given in the plat, and where an old fence around defendant's lot therein is placed in accordance with the plat,—these things, taken in connection with conceded extrinsic facts, show that the plat was based on a survey not only of the boundaries of the addition but of the interior lot lines.

3. ————: **Unmarked Lines: Calls for Distance.** An unmarked section line does not constitute either a "natural monument" or an "artificial mark," and does not overcome a call for distance.

4. ————: **Evidence: Surveyor.** The testimony of a surveyor who did not put the data of his survey in evidence or show that he was the county surveyor when he made his survey, is not evidence as to the location of the boundaries of an addition to a city.

5. **SURVEY: Illegal: Surplus.** A survey is illegal which makes a surplus of thirty feet in the width of the east half of a section, in violation of the act of Congress which requires that in subdividing fractional sections on the west side of a township, the surplus over forty chains in width shall all go to the west side of the section.

6. **EJECTMENT: Plat: Showing of Right.** When the defendant in ejectment is in possession claiming under a plat as actually laid out on the ground, the plaintiff cannot displace her except by affirmatively showing a better right.

7. **SURVEYS: Presumptions.** Where surveys are illegal in the matters shown to the court, it will not be presumed that they were correct in those particulars as to which the court is not informed.

8. **PLAT: Considered as a Whole.** A plat is not to be taken to pieces; it is to be taken as a whole.

9. ————: **Not be Warped to Right or Left.** The boundaries of a lot as laid out by a plat will not be changed when to do so would shift to the eastward the position of every lot in a whole block and destroy the addition as laid out, substituting therefor another and a different one.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

Reversed and remanded.

*John Schmook* for appellant.

(1) When, in making surveys of lots and blocks, the lots are staked out upon the ground, the stakes must control. The stakes are to be regarded as controlling monuments, and if they are afterwards removed, the point where they were previously set or located may be shown and will govern. Newell on Ejectment (Ed. 1892), pp. 568, 569. (2) If, in laying off the land, the grantor mistook the government line, and the tract as laid off was marked by stakes and other monuments, the grantee took according to the lines actually run and established, though they did not correspond to the line in the government survey. Fisher v. Bennehoff, 13 N. E. 150.

. *J. T. White* for respondent.

(1) There being no declarations of law asked or given to indicate the theory of the trial court, all inferences which may be drawn from the facts in favor of the plaintiff must be drawn in order to sustain the verdict. (2) If the lines had been actually located and staked out on the ground, that would have some significance, as appellant claims; but there is not a scintilla of evidence where any lot or any line in the addition was originally staked out or placed, and particularly is there no evidence that the boundary line in dispute between the lots of the parties, was located at

the place defendant claims, when the addition was staked out. If that line had been staked and monument set to mark the corners when the addition was staked out, it would not control the parties now unless these stakes or monuments were visible at the time they bought and took possession of those vacant lots. Whitehead v. Atchison, 136 Mo. 495.

ROY, C.—This is an ejectment suit to recover possession of a strip twelve and one-half feet wide, which the plaintiff alleges is the east part of lot twenty in block two of Chamberlain's Addition to Springfield.

The defendant claims that the strip constitutes the west part of lot twenty-one in said block.

It is agreed that plaintiff owns lots nineteen and twenty and that the defendant owns lots twenty-one and twenty-two, and the dispute is as to the boundary line.

The case was tried without a jury. On the written request of defendant, the court made a special finding of the facts and found for plaintiff. The defendant has appealed.

On March 21, 1887, one McCann conveyed to Chamberlain a tract of land described as follows: "Beginning in the center of Walnut street as laid down in Robertson's Addition to the city of Springfield, Mo., eleven hundred and twenty-three (1123) feet east of the range line dividing range twenty-one (21) and twenty-two (22); thence east along center of Walnut street projected four hundred and ninety-six and three-tenths (496.3) feet to the west line of the right of way of the Springfield and Southern Railway, thence south and east on and along said west line of the right of way nine hundred fifty-four (954) feet to a point on the east line of the west half of the southwest quarter of the northeast quarter of section nineteen (19), township twenty-nine (29) north, range twenty-one west of the Fifth (5th) P. M., thence south on said line

one hundred and seventy (170) feet to the center of Cherry street projected, thence west on and along said center of Cherry street projected six hundred and sixty-two (662) feet to the center of said section nineteen (19), thence north along the line dividing the east and west halves of section nineteen (19) four hundred and seventy-two (472) feet to the center of Elm street projected—thence west on and along the center of said Elm street projected three hundred and thirty (330) feet, thence north five hundred and nineteen feet to the center of Walnut street projected; the place of beginning.  Reserving for the ordinary purposes of roads and highways a strip of thirty (30) feet off the north and south side and sixty feet through the center portion running from the point where Elm street projected joins this tract of land to the right of way of the Springfield and Southern Railway.''

On April 5, 1887, Chamberlain filed a duly executed and acknowledged plat of said addition in the office of the recorder of deeds, in which the land included was described just as in the deed to him.  The plat is as follows:      (See plat on opposite page.)

It is conceded by the evidence on both sides that the starting point and the distance along the north boundary of the addition are correct and that by following the right of way of the railroad southeastwardly the distance of just 954 feet called for, and running thence south 170 feet just reaches the center of Cherry street; and that running thence west with Cherry street 662 feet just reaches an old post and wire fence, which runs a short distance north and is thence continued by a hedge fence; and such evidence of both sides shows that, with the boundaries of the addition thus run, the line between the plaintiff and defendant is where defendant claims that it is, and that on a part of that line as claimed by the defendant there was, shortly before the trial, an old fence which had enclosed defendant's garden.

Plat of Chamberlains Addition to Springfield, Mo.

The plaintiff claims that the east boundary of the west half of the southwest quarter of the northeast quarter of the section is eighteen feet further east than is called for by the distance of 954 feet along the right of way, and that the description in the plat should be so construed as to hold that such line is the east boundary of the addition. Plaintiff also claims that the center of the section is twelve and one-half feet further east than is called for by such measurements.

246 Sup.—31

Mr. Culler, who had been county surveyor for three and a half years made a survey by which he located the line between the parties at the place contended for by the defendant.

Mr. Phillips, who had been county surveyor and city engineer and surveyor under the government, testified as follows:

"Q. Now, I will ask you, in accordance with that, where the west line of Mr. Dolphin's lot number nineteen would be, according to Mr. Culler's survey there? Where would it be in reference to the poles of the street railroad company in the street there? A. It would be in the neighborhood of twelve feet west.

"Q. In the street? A. Yes, sir.

"Q. Now it would come clear outside of the poles of the street railway there? A. I think so.

"Q. What lot was taken for that street? A. Eighteen.

"Q. Now, Mr. Schmook asked you about the west line is it? A. For a short distance it is an old post and wire fence running north, and then—

"Q. Well, next to Cherry street, what sort of a fence is it? A. At the southwest corner of the addition?

"Q. Yes. A. It is an old wire fence, and then runs into a hedge fence.

"Q. Where is that fence in reference to the center line of the addition there, the line mentioned in the description in the plat here? A. It is twelve feet further west.

"Q. I will ask you if you know whether on the east of that addition if there is a tract of land, according to Mr. Culler's survey if he is correct, if there is any land not claimed by anybody in the addition there? Is there a strip over there on the east? A. There would be, yes, sir.

"Q. Of how much? A. It would leave eighteen feet over there.

"Q. Now take this fence on the west which you say—the hedge fence which you say is twelve feet west of the center line, how does that correspond with the line of the tract south of that, with the west line of Pickwick Place? A. It would correspond very closely.

"Q. That fence or that line as you claim it, does that correspond with the west line of Pickwick Place? A. Yes, sir, it is on the line with those old trees, an old fence before the old fence was taken down.

"Q. The line through the center of the section as you found it there corresponds with the west line of Pickwick Place? A. Yes, sir, it corresponds with the line of trees.

"Q. Have you surveyed that section nineteen pretty generally? A. Yes, sir.

"Q. You know where the section lines are? A. Yes, sir."

He also testified:

"Q. Now, did you and Mr. Culler make that survey in the center of Walnut street along the railroad right of way 954 feet? A. We did.

"Q. Now when you came to the 954 feet were you to the center of Cherry street? A. Not quite. It don't quite reach the intersection of Cherry street.

"Q. Now, when you got 954 feet, you got to the section line, or the half section line, which is it? A. It is a quarter quarter line. But it don't reach it.

"Q. How many feet east or west of that quarter quarter line is it? A. About eighteen feet.

"Q. Which way? A. This 954 feet stops short of it.

"Q. Now what section is that in? A. Nineteen.

"Q. That is in section nineteen. Is section nineteen a section that contains lots? A. Yes, sir.

"Q. On the west? A. Yes, sir, fractional section.

"Q. The consequence is that they measured what

would be to the section line if the forties were exact forties? A. Yes, except two feet.

"Q. Are the lots there full? A. They are more than full. They are eight feet full. They have allowed two feet.

"Q. So this 954 feet call lacks about eighteen feet; is it eighteen feet west? A. The 954 feet strikes a point eighteen feet west of this quarter quarter line. Then if we run straight south we would run parallel with this line eighteen feet from it.

"Q. So that is eighteen feet west of this quarter quarter line? A. Yes, sir. But if we stop at the 954 feet and proceeded from there, as we did, there is where we located the iron pin.

"Q. If you go on to where you strike the quarter quarter line before you turn south—well now the way you did, going the 954 feet, then the next call south is 170 feet? A. Yes, sir."

Also:

"Q. Then running southeast along the west line of the right of way 954 feet, and from there south to the center line on Cherry street, and from there west to the old fence, allows for all of the lots in this addition according to the plat fronting on the north side of Cherry street? A. Yes, sir.

"Q. And it was based upon that that you and Mr. Culler agreed and set this iron pin? A. We supposed that was the way it was surveyed.

"THE COURT. Q. If you go to the range line on Walnut street and then survey east 1123 feet to the beginning point, and then make all the calls in this plat to the southwest corner of the addition you will be in the center of Cherry street on the line of that old fence? A. Yes, sir.

"Q. You don't know whether it is west of the center of the section twelve feet or not? A. That is according to the distances given in the calls.

"Q. If you go the distances given in the calls you

will wind up on Cherry street on that line? A. Yes, sir.

"Q. But you will never strike the east line as called for as one of the calls? A. Possibly not quite.

"Q. Did you survey that to see that the center of the section would be twelve and one-half feet east of the old hedge fence? A. Yes, sir. Yes, I run both section lines through there."

There is no evidence showing that there was ever at any time any monument or object marking the location of the center line of the section or of the east line of the west half of the southwest quarter of the northeast quarter of the section at the places where the plaintiff claims that such lines are; and there is no evidence that such lines were ever so located by a survey except the evidence of Surveyor Phillips as above set out.

Plaintiff's evidence showed that the eighteen foot strip on the east is not claimed by any one adversely to the owner of the adjacent lot, and there is no evidence that the twelve and one-half foot strip on the west of the addition is so claimed. Prior to the filing of the plat, Cherry street was laid out and opened along the south line of the addition at the place called for by the plat.

The verdict and finding having been for the plaintiff, and there being no declarations of law, the verdict should not be disturbed if there is evidence to support the finding. We hold there is no such evidence for the following reasons:

I.   Sec. 6559, Revised Statutes 1879, now Sec. 10290, Revised Statutes 1909, required that any one laying out an addition should "cause to be made out an accurate map or plat thereof particularly setting forth and describing; . . . all lots for sale, by numbers, and their precise length and width."

There are two strong reasons for finding that the lots and streets and their location were accurately sur-

veyed and marked out on the ground as a basis for the plat. The first reason is that the law presumes that such survey and marking were made. We have no case in this State expressly so holding; but in Burke v. McCowen, 115 Cal. l. c. 485, it is said: "The making and filing of the plat or map of the Ukiah North Addition implies that said addition had been surveyed, and that the map or plat thereof filed September 18, 1889, was based upon said survey, and that such survey was marked upon the ground so that the streets, blocks and lots could be identified." That court then cites, on the point McDaniel v. Mace, 47 Iowa, 510; Banker v. Caldwell, 3 Minn. 103; Jackson v. Freer, 17 Johns. 29, 31; Jackson v. Cole, 16 Johns. 261.

Those cases are not all directly in point, but they support the general proposition.

II. The plat bears on its face facts which, taken in connection with the conceded extrinsic facts, show that the plat was based on a survey not only of the boundaries of the addition but of the interior lot lines. The plat shows that the course of the railroad is not straight, but that it curves to the eastward as it goes southward. The lengths of the lines running east and west as boundaries of the lots are marked on the plat. The lots bordering on the right of way of the railroad are irregular in shape and the lengths of their boundaries are marked accordingly. It would have been difficult if not impossible to correctly indicate such distances without such survey. We have a right to take notice of the historical fact that on the invention of wire fencing, hedges were no longer planted in this State, and that the hedge fence at or near the southwest corner of the addition was there when the addition was platted. We have a right to draw the inference that such fence was adopted by the maker of the plat as the west boundary; in other words, as the center line of the section. It was right on the line

Dolphin v. Klann.

called for by the courses and distances. The old fence enclosing a part of defendant's premises shows that it was placed there in accordance with such courses and distances disregarding the two lines as now claimed by plaintiff for the east and west boundaries of the addition.

In Whitwell v. Spiker, 238 Mo. l. c. 638, it was said by Brown, J., speaking of government monuments and surveys: "These, in thickly settled communities, and especially in cities, become obliterated, and their places are supplied by houses, fences and other visible things that have been planted or adopted for that purpose. When this has been done they may be used as landmarks for all, and their removal does not, of course, remove the land that has been bought and sold with reference to them." Any surveyor who undertakes to establish a different line should be required to show "good grounds for the faith that is in him."

III. Even if it were true, as contended for by the plaintiff, that the east boundary of the addition running south from the railroad is eighteen feet further east than called for by the distance given along the right of way, that boundary would not, in such case, be the east boundary of the addition. That line was never marked by any monument or object of any kind. Such an unmarked line does not constitute either a "natural monument" or "artificial mark," and does not, when called for in a deed, overcome the call for distance. It was so held by Valliant, J., in Guitar v. St. Clair, 238 Mo. l. c. 627, and in Koch v. Gordon, 231 Mo. l. c. 652.

The same rule holds good as to plaintiff's claim that the center of the section is twelve and one-half feet east of the fence. We hold that the call for 954 feet from the center of Walnut street along the right of way prevails over the call for an unmarked subdivisional line of the section, and that the courses and distances around to the southwest corner of the ad-

dition prevail over the unmarked line which plaintiff claims to be the center line of the section, and that would be the case even though it were the true line.

IV.  We hold that there is no evidence sustaining plaintiff's claim as to the location of the boundaries of the addition.  The witness Phillips, on whose sole testimony the contention of plaintiff is based, was not the county surveyor for three and a half years at least before the trial.  There is no evidence that he ever, while such county surveyor, located those lines.  It was said by GANTT, J., in Granby Mining Co. v. Davis, 156 Mo. 422, that where the interior corners of sections have been fixed by county surveyors, such corners as thus fixed will be binding in the absence of proof that such surveyor has violated the law in his methods.  The survey or surveys alleged to have been made by Phillips are not shown to have been made by him while such surveyor.  He does not give any data from which he made such surveys, such as his starting points, etc.

In Jones v. Lee, 77 Mich. 42, 43, it was held that the testimony of surveyors as to their surveys where the data from which the surveys were run were not given, has no force or effect and that plats so made and in evidence did not give the data necessary to measure the rights of the parties.

V.  The surveyor, Phillips, did not explain how, in finding the center of the section, he allowed seven and one-half feet surplus in the width of the west half of the southwest quarter of the northeast quarter of the section.  That makes a surplus of thirty feet in the width of the east half of the section.  That is a violation of the act of congress which requires that in subdividing fractional sections on the west side of the township, the surplus over forty chains in width shall all go to the west side of the section.  [Vaughn v. Tate, 64 Mo. 491; Knight v. Elliott, 57 Mo. 317.]  It thus appears affirmatively that the Phillips surveys were

not legal. If it be said that the plat gives a surplus of two feet in the south boundary of the west half of the southwest quarter of the northeast quarter, which is equal to eight feet surplus in the width of the east half of the section, we answer that such fact does not help the plaintiff. The defendant is in possession claiming under the plat as actually laid out on the ground, and the plaintiff cannot displace her except by affirmatively showing a better right. We have not overlooked the fact that, if the Phillips surveys were otherwise correct, the allowance of a surplus by Phillips was favorable to the defendant and threw the center of the section further west than it would otherwise have been. It should, however, suffice to say, that those surveys being illegal in the matters which we know about them, we will not presume that they were correct in those particulars as to which we are not informed.

VI. Finally, moving the southwest corner of the addition twelve and one-half feet east of that fence will change the direction of the west boundaries of every lot in block two. It will shift the position of every one of those lots to the eastward. It will change the width and contour of the fractional lots.

It was said by VALLIANT, J., in Guitar v. St. Clair, supra: "The plat is not to be taken to pieces, it is to be taken as a whole, and the rights of the city and of individuals, in so far as they are derived from the plat, date from its filing." We hold that the plat cannot be warped to the right or left. To do so in this case would be to destroy the addition as laid out, and substitute another and a different one therefor.

The judgment is reversed. *Blair, C.,* dissents.

PER CURIAM.—The foregoing opinion of *Roy, C.,* is adopted as the opinion of the court. All the judges concur.

On motion for rehearing the cause is remanded for a new trial.