A. L. PRITCHARD *v.* T. T. REBORI.

(*Jackson.*   April Term, 1916.)

1. **BOUNDARIES. Controlling elements.**

The general rule that resort is, first, to natural objects or land-marks; second, to artificial monuments; third, to lines of adjacent owners; and last, to courses and distances—is not inflexible or absolute. (*Post, pp.* 332, 333.)

2. **DEEDS. Construction. Intention of parties.**

Construction of a deed is to discover intention of the parties, and this applies to descriptions as well as to other parts of the instrument. (*Post, p.* 333.)

3. **BOUNDARIES. Controlling elements. Monuments.**

There is no magic in a monument called for so as to make it control invariably, but it controls only when regarded as more certain than course or distance. (*Post, p.* 333.)

4. **BOUNDARIES. Controlling elements. Adjacent boundary.**

A mere adjacent boundary line would yield more readily to course and distance that an artificial monument. (*Post, pp.* 333, 334.)

Case cited and distinguished: Carson v. Burnett, 18 N. C., 546.

5. **BOUNDARIES. Controlling elements.**

The rule that course and distance yield to monuments or adjacent boundary lines is usually applied in fuller force to large boundaries of land in the country, and with less potency in towns or cities. (*Post, p.* 334.)

Case cited and distinguished: White v. Luning, 93 U. S., 514.

6. **BOUNDARIES. Controlling elements.**

In deeds to city property, where courses and distances were intended by the parties to control, they will be given that effect. (*Post, pp.* 334, 335.)

Pritchard v. Rebori.

### 7. DEEDS. Construction. Property conveyed.

The object in all boundary questions is to find as nearly as may be certain evidences of what particular land was meant to be included for conveyance. (*Post*, *pp.* 334, 335.)

### 8. DEEDS. Construction. Property conveyed. Presumptions.

The natural presumption is that the deed was made after and with reference to an actual view of the premises by the parties. (*Post*, *pp.* 334, 335.)

### 9. BOUNDARIES. Controlling elements.

Where a deed to a city lot recited "thirty feet to a right of way," and there was no actual monument marking the right of way, the call for the right of way would yield to distance; the parcel being so small as to be seen at a glance, and the outer limit lacking definiteness to override the distance call, especially where a fence inside the right of way misled the parties to believe it to be the boundary. (*Post*, *pp.* 335, 336.)

Cases cited and approved: Doe v. Riley, 28 Ala., 164; Dolphin v. Klann, 246 Mo., 477.

### 10. BOUNDARIES. Evidence. Parol evidence. Intent.

A grant of land bounded on a street will be referred to the street as built and used, and not as shown on a recorded map or plat; but if the land is conveyed bounded by a highway, parol evidence is admissible to show whether the actual or the surveyed line was intended. (*Post*, *pp.* 336, 337.)

Case cited and approved: Wead v. St. Johnsbury, etc., R. Co., 64 Vt., 52.

### 11. CONVENANTS. "Incumbrance." Railway right of way. Damage.

Where land sold under warranty encroached on a railroad right of way, such right was an encumbrance and the grantee on removing it would recover the amount necessarily paid in so doing, with interest, if fair and reasonable, as damages for the breach of covenant. (*Post*, *p.* 337.)

Cases cited and approved: Kenney v. Norton, 57 Tenn., 384; Robinson v. Bierce, 102 Tenn., 428.

Pritchard v. Rebori.

FROM SHELBY

Appeal from the Chancery Court of Shelby County.
—Jas. L. McRee, Special Chancellor.

P. H. Phelan, Jr., for appellant.

Wilson & Armstrong, for appellee.

Mr. Justice Williams delivered the opinion of the
Court.

The bill of complaint filed by Pritchard was to re-
cover for the breach of a covenant against incum-
brances incorporated in a deed executed to him by de-
fendant, Rebori.

It appears that the Southern Railway Company
owns between Madison and Monroe avenues in the
city of Memphis a right of way that extends fifty feet
westward from the center of its track. This ease-
ment was acquired by its predecessor in title in the
year 1855. The tracks of the railway at the place in
question lie in a cut, the western slope of which does
not take up the entire distance of fifty feet; that is
to say, the top edge of the slope runs east of the true
western limit of the right of way.

However, at the base of the slope the company has
constructed a fence of heavy timbers which was evi-
dently built for the purpose, in part at least, of hold-

ing back the dirt that might slide from the slope. This fence is about fifteen feet from the track. There was nothing in the way of fence, posts, or markers in the western margin of the right of way to indicate where it was.

Pritchard was desirous of acquiring a site near the railway track on which to build a warehouse, and purchased a parcel of land from defendant for that purpose. The distance calls of the deed run to the fence at the base of the cut, considerably beyond the record showing as to the real western line of the right of way.

When Pritchard began to construct the warehouse he was notified by the railway company of its rights and his invasion thereof. On taking legal advice, he found that the building was being erected several feet within the limits of the legal right of way.

In order to remove the incumbrance and continue building operations, Pritchard conveyed two pieces of realty to the railway company, in return for which it quitclaimed to him that portion of the right of way which was covered by both the deed from defendant, Rebori, and the building, paying what is contended to be a fair price for the same.

To fairly set forth the points in dispute, it may be well to quote the description of the parcel contained in the deed executed by Rebori. The particularity and nicety of the distance calls will be noted.

"Beginning at a point, the intersection of the east line of South Lauderdale street with the north line of the first alley south of Madison avenue; running

thence eastwardly with said alley forty (40) feet to the southwest corner of lot No. 13; thence continuing east with the south line of lots Nos. 11, 12 and 13 one hundred forty-six (146) feet, to a point in the west line of lot No. 10; thence south with the west line of lot 10 sixteen (16) feet; thence east fifty-two (52) feet to the Scroggings subdivision; thence northwardly with the west line of the Scroggins subdivision *thirty (30) feet to the right of way of the Southern Railroad;* thence northwestwardly with the line of said right of way two hundred sixteen (216) feet, to the northwest corner of lot No. 13; thence southwardly with the west line of lot No. 13 one hundred fifty-eight and five-tenths (158.5) feet to the northeast corner of lot No. 7 of the Armour subdivision; thence westwardly with the north line of lot No. 7, forty-seven and eight-tenths (47.8) feet to South Lauderdale street; thence south with South Lauderdale street fourteen and two-tenths (14.2) feet to the point of beginning.''

The prime contention of Rebori is, that the line of the parcel that is underscored must stop at the real or record line of the right of way, and that, so stopping, the deed did not convey any land east of that line; therefore, that there is no incumbrance.

We are brought to a consideration of the rules of construction applicable in this action between the immediate vendor and vendee.

The general rule is that in determining boundaries resort is to be had, first, to natural objects or landmarks, because of their very permanent character,

next, to artificial monuments or marks, then to boundary lines of adjacent owners, and then to courses and distances. But this general rule, as to the relative importance of these guides to the ascertainment of a boundary of land, is not an inflexible or absolute one.

The use of the rule is a means to the discovery of the intention of the parties. To arrive at the intention of the parties to the instrument is the purpose of all rules of construction, and this applies to the description of premises conveyed as well as to other parts of the instrument.

It is not true, as appellant supposes, that there is such magic in a monument called for that it will be made to control in construction invariably. If it controls it is only because it is to be regarded as more certain than course or distance.

"If it should in a given case be less certain, the rule would fail with the reason for it and the monument would yield to the course and distance and an artificial monument will yield more readily than a natural one." Note 30 Am. Dec. 734, 740.

It is manifest that a mere adjacent boundary line would be caused to yield more readily to course and distance than would an artificial monument:

"When the call is for the line of another, it has also been held that course and distance may yield to it. But it is, obviously, not so decisive as the call for a natural boundary; and the mind may be under perfect conviction, from other circumstances, that the mistake is not in the course and distance, but in sup-

posing that the other had a line at the end of the course and distance. If that conviction exists, there ought to be no deviation from course and distance." Carson v. Burnett, 18 N. C., 546, 30 Am. Dec., 143; 1 Jones, Real Prop., section 383.

The rule that course and distance yield to monuments or adjacent boundary lines is usually applied in fuller force to large boundaries of land in the country, where mistakes in the use of a surveyor's chain may easily occur, and with less potency to land in towns or cities. This for a manifest reason:

"Where the lines are so short as evidently to be susceptible of entire accuracy in their measurement, and are defined in such a manner as to indicate an exercise of care in describing the premises, such a description is regarded with great confidence as a means of ascertaining what is intended to be conveyed." *White* v. *Luning*, 93 U. S., 514, 23 L. Ed., 938.

Ordinarily surveys are not so loosely made where small and very valuable parcels are to be conveyed as in case of large boundaries, where the surveys are made on rough land or in forests; and there is not equal occasion for the application of the general rule that courses and distances are to be regarded as more uncertain, and must, therefore, give place to known monuments or boundaries, referred to as identifying the land. Where in such case it appears that courses and distances were intended by the parties to control they will be given that effect. The object in all boundary questions is to find, as nearly as may be, certain

evidences of what particular land was meant to be included for conveyance. The natural presumption is that the conveyance is made after and with reference to an actual view of the premises by the parties to the instrument. The reason why a monument or adjacent line is ordinarily given preference over courses and distances is that the parties so presumed to have examined the property have, in viewing the premises, taken note of the monument or line.

In the case at bar the outer limit of the real right of way was not marked in any way; and the parcel was so small that it could be taken in by the contracting parties at a glance. The outer limit, therefore, lacked the element of open or manifest definiteness and fixity to constitute a boundary line that ought to be held to override the call of courses and distances. There were no right of way stakes or marks on the west boundary of the right of way to be visible, for purpose of demarcation, to the parties to the deed; and the right of way should be deemed to be undefined and without the characteristics of a monument, as against the call for distance. When a street or right of way is, as to limits, so unmarked and indefinite, it should not overrule the courses and distances of so small a parcel as this, every distance call of which would be changed in event of conformity thereto.

"Where, as in the infancy of a town, streets are only undefined portions of land dedicated to public use and themselves required to be located, they cannot be given controlling effect in fixing boundaries of

other lands.''   4 Rul. C. L., p. 103; 5 Cyc., 923; *Doe
v. Riley*, 28 Ala., 164, 65 Am. Dec., 334; *Dolphin* v.
*Klann*, 246 Mo., 477, 151 S. W., 956.

The fence, in the nature of a retaining wall, at the
base of the slope of the cut, gave the contracting par-
ties the impression that it marked the limit of the
right of way on the west. The distances called for by
the deed reach and terminate at this fence. The gran-
tor, Rebori, had previously had the parcel surveyed so
as to reach the fence. He supposed the fence to be
the east line of his property, and it appeared that he
so treated of it in the negotiations with Pritchard, who
testifies that he would not have purchased unless the
fence was in fact the line. Rebori admits that this
is true. Both parties proceeded, therefore, on the
assumption that the fence stood on the western line
of the railway right of way, if proof of the facts may
be looked to.

That it may not, is a contention of appellant, Rebori.

The rule in such case is well stated by Mr. Jones in
his work on Real Property, section 466:

''A grant of land bounded upon a public street will
be referred to the street as actually built and used,
rather than to the street as shown upon a recorded
plat or map. . . . It is like any other monument
described as a boundary, a monument existing in fact.
But where land is conveyed bounded by the line of a
highway, parol evidence is admissible to show whether,
by such description, the parties meant the surveyed

line of the highway or the line actually used and occupied.''

See, also, 2 Devlin on Deeds (3d Ed.), section 1015 (a); 5 Cyc., 867; *Wead* v. *St. Johnsbury, etc., R. Co.,* 64 Vt., 52, 24 Atl. 361.

The existence of the right of way constituted a valid outstanding incumbrance on the land, which the covenantee had a right to remove; and the rule is that he is entitled on doing so, as damages for the breach of the covenant against incumbrances, to recover the amount necessarily paid in the discharge, with interest, provided the expenditure was fair and reasonable. *Kenney* v. *Norton,* 10 Heisk. (57 Tenn.), 384; *Robinson* v. *Bierce,* 102 Tenn., 428, 52 S. W., 992, 47 L. R. A., 275; 3 Sedg. Damages (9th Ed.), section 978.

Other assignments of error are disposed of in a memorandum for decree. Affirmed.