PIONEER COOPERAGE CO., APPELLANT, v. GEORGE BLAND AND JOHN FOSTER, RESPONDENTS.—75 S. W. (2d) 431.

Springfield Court of Appeals, October 3, 1934.

Rehearing denied, November 9, 1934.

*E. W. Bennett* and *S. A. Cunningham* for appellant.

*Wm. P. Elmer* and *G. L. Gamblin* for respondents.

ALLEN, P. J.—In substance, the pleadings are as follows:

Plaintiff is a corporation, under the laws of Missouri.

That on the 30th day of September, 1931, it was the owner of and lawfully entitled to the possession of certain goods and chattels to the value of $182.13, described as follows:

4,000 feet of oak inch lumber, lengths $8\frac{1}{2}$ to $14\frac{1}{2}$

180 switch ties, sixe 7 x 9—lengths $8\frac{1}{2}$ to 14 feet, now stacked on the right-of-way of the Frisco Railroad in Salem, Missouri. And that afterwards, on the same day defendants wrongfully took said property from the possession of the plaintiff and still unjustly detains the same at the County of Dent, aforesaid, to the plaintiff's damage, in the sum of $10.

Wherefore, plaintiff demands judgment against defendants for the recovery of the possession of said goods and chattels and $10 damages for their taking and detention; and in case delivery of property cannot be had then plaintiff prays judgment for $182.13 the value thereof.

Defendants, for answer, filed a general denial, and further stated that they were the vendees and Susie K. Smith was the vendor of said growing timber, said timber being on and a part of certain realty in Shannon County, Missouri, of which Susie K. Smith was the owner, and that the lumber and ties were manufactured from timber which was growing upon the said land; and that these defendants severed said trees from the soil belonging to Susie K. Smith. That the plaintiff herein and the said Susie K. Smith were adjoining landowners and that the trees severed as aforesaid, were located upon land which the said Susie K. Smith had claimed as her own, and which she had been in possession of adversely, notoriously and openly for a period exceeding ten years. Defendants further state that the plaintiff recognized a certain boundary line dividing the land of Susie K. Smith and the Pioneer Cooperage Company and that the trees were cut from said land belonging to Susie K. Smith, and so recognized by plaintiff, until recently when, prior to the institution of this suit, they had the land surveyed by their own surveyor. Defendants further state that the said Susie K. Smith does not recognize the line so surveyed, but still claims title to the land from which said trees were cut.

Defendants pray the court to adjudge them entitled to the possession of said lumber and ties, or judgment for the value thereof, together with damages in the sum of $500, for the wrongful institution of this suit.

L. P. Coleman testified:

That he had been employed for the past eight years by appellant, and had thirty years' experience in estimating timber and running lines. Knew the location of the NW¼ of Sec. 28, Twp. 31, Range 5, Shannon County, owned by the appellant. Also knew land east of the appellant's land, known as the Bealert farm. Had made an inspection of the appellant's land in October, 1931. That there was a fence along the west line of the Bealert farm. West of the fence is in timber and a strip had been cut into the timber by respondents. Their mill is located on Pioneer Cooperage Company's land. There were 24,396 feet of timber cut; it was sawed into switch ties and tie siding and taken to Salem and stacked on the right-of-way of the railroad.

CROSS-EXAMINATION:

Had noted the timber cut on west side of the fence from the stumpage. Didn't see is cut or hauled. Bland and Foster told him they hauled the timber down to the mill and shipped it away. They said the timber replevined came off the strip of land west of the fence. They were not cutting off the Susie K. Smith land, this timber came off the Pioneer Company's land. Saw some of it unloaded. The fence was a wire fence, on about as straight a line as a man could run if he was trying to follow a line. It was about a quarter of a mile long. The timber replevied had been sold; the ties were sold for $132.64 and tie siding for $48.49. This was the price Bland and Foster had contracted the timber for. That was all the lumber he got under the replevin. There were 24,396 feet cut. They replevied about 14,274 feet, which was short 10,112 feet, which he knew nothing about. He scaled everything marketable that was cut.

W. W. Paulding said he lived in Shannon County about forty-five years. Was county surveyor about five years. Had experience in surveying since 1881. Knew the NW¼ of 28-31-5, Shannon County, Missouri. Also knew the NE¼ which belonged to Bealert. That appellant company owned the NW¼ of Section 28. He ran the line on the west side of the Bealert land at his request, about twenty-five years ago, but was not county surveyor.

"By Mr. Elmer: I object to any line he ran. They can't bind anybody by a line of that kind, if he wasn't the county surveyor.

"By Mr. Cunningham: I understand he run it at the request of Mr. Bealert, and they were together. I think that would be sufficient evidence to establish the line between him and the other fellow.

"By Mr. Elmer: It might establish it between Bealert and him, but it wouldn't establish it as to a subsequent owner, because they bought it according to a legal survey."

Objection was sustained to which appellant excepted.

"There is a fence on the west side of the Bealert farm. Mr. Bealert put it there just a little while after I made the survey. The fence is practically straight.

"Q. Is that fence located on the line of the survey that you made at the time?

"By Mr. Elmer: I object to that as immaterial.

"By the Court: Sustained."

T. J. Humphreys, testified as follows:

"I have been county surveyor of Shannon County for about twenty-four years. Am acquainted with Sec. 28-31-5. I ran the center line of 28 for the Pioneer Cooperage Company about three months ago. I noticed the fence when I ran the line and I ran on the inside of the fence about eight feet. I started from the south half section corner. I noticed a saw mill on the west side of the line I ran. I noticed timber cut on the west side of the fence."

"Q. I understand you started at the south center section corner? A. Started at the half section corner of the south half of twenty-eight.

"Q. And run the line north?

"By Mr. Elmer: We object to that. That's his conclusion about it. The statute provides how a survey shall be made.

"By Mr. Cunningham: Q. All right, go on and describe this survey up there.

"By Mr. Elmer: We object to that, he has got a record of it in his surveyor's record.

"By the Witness: Well alright here it is.

"By Mr. Elmer: I wasn't asking you for it, I said you had a record of it.

"By Mr. Cunningham: Q. Have you a plat of that land up there? A. Yes, sir.

"Q. Have you the field notes noted on there taken from the— field notes of the county? A. Yes, sir.

"Q. I will just ask you to state to the jury your survey of that land taken from the field notes as you have it.

"By Mr. Elmer: I object to that because he is supposed to make a record of the survey of this, and the record is the best evidence.

"By Mr. Cunningham: If the Court please, the record is a part of the office of Shannon County and he has no right to bring it up here.

"By Mr. Elmer: Well he is the custodian of it, isn't he?

"By the Witness: I wasn't requested to bring it up here.

998

"By Mr. Elmer: The record is the best evidence and they can't prove it by any other way except the record.

"By Mr. Cunningham: Q. Have you a memorandum of your record made of this with you? A. No, I sure haven't that's at Eminence. The only thing I have is my plat and the corner started from.

"Q. Well as county surveyor, you run the line north and south through the center of twenty-eight did you? A. Yes, sir.

"Q. I will ask you to state to the jury where that line runs in relation to the C. B. Bealert farm, the fence?

"By Mr. Elmer: I object to that because the record of his survey is the best evidence and he hasn't shown he has made a legal survey and that can only be shown by the record."

Objection sustained.

To which action of the court in sustaining this objection on the part of the defendant, the plaintiff in open court, by counsel, objected and excepted at the time.

"By Mr. Cunningham: If the Court please, it looks to me we have proven by Mr. Paulding that in connection with Mr. Bealert he run the line and Mr. Bealert put the fence there and I am now asking which side of the fence his line went on.

"By the Court: You are trying to establish a line by survey?

"By Mr. Cunningham: Yes, sir.

"By the Court: What is the best evidence of that survey? Is it the oral statement or the record that was made at the time of the survey?

"By Mr. Cunningham: Well, that's a matter that is up to the court.

"By the Court: There's a record made of that survey, and if it is objected to, they are entitled to the best evidence.

"By Mr. Cunningham: If I was asking as to a specific line, that would be true, but I am just asking where his line run with reference to that fence.

"By the Court: Suppose his line does not amount to anything, now, does it unless he established it by the notes he made at the time?

"By Mr. Cunningham: He couldn't tell where the fence was?

"By the Court: It seems to me if you established the fence, then you have got no line. If he is going to establish a line by a survey, I think the record is the best evidence."

At the close of the plaintiff's testimony the defendants filed a demurrer in the nature of a peremptory instruction, which is as follows: .

"The court instructs the jury that you will find the issues for the defendants and assess the value of the property at $181.13 and for the possession of 2016 feet of lumber in possession of plaintiff."

The plaintiff then asked leave to take an involuntary nonsuit, which was by the court refused.

To which action of the court in refusing to allow the plaintiff to take an involuntary nonsuit, the plaintiff, in open court, objected and excepted at the time.

The court then sustained the demurrer, and directed the jury to sign the following verdict:

"We, the jury find the issues for the defendants and find that at the time of the institution of this suit the defendants were the owners and entitled to the possession of the property described in the petition not sold by plaintiff, 2016 feet of lumber and ties and that the value of the property is $181.13, and assess the damages for taking and detaining the property at nothing."

I. Defendants urge that appellant was not entitled to take a nonsuit, because it had respondents' property and money in its possession, and by taking a nonsuit could have deprived them of their property, or at least have subjected them to increased difficulties and additional litigation.

In the case of State ex rel. J. Hahn Bakery Co. et al. v. Thomas L. Anderson, 190 S. W. 857, and also 858 and 859, our Missouri Supreme Court held:

"The statute thus urged upon our attention reads thus: 'The plaintiff shall be allowed to dismiss his suit or take a nonsuit at any time before the same is finally submitted to the jury, or to the court, sitting as a jury, or to the court, and not afterward.' Section 1980, R. S. Mo. 1909" (now Section 960, R. S. Mo. 1929).

Same cases, l. c. 858, states that:

"In an early case upon a point measurably analogous, it was said by this court:

" 'No *nolle prosequi* or dismissal of a party ought to be allowed when it will produce any derangement in the rights of the defendants, deprive them of a legal defense, or subject them to increased difficulties, or liabilities.' [Browning v. Chrisman, 30 Mo. l. c. 357.]

"It will be seen that the statute contains no specific authority for doing what was done here. While it permits the plaintiff to wholly dominate and manage his lawsuit, it yet contains nothing which will allow plaintiff to do this in such wise as will work injury to the rights of the defendant."

In the same case l. c. 859, it is said:

"The principle involved in this holding is that invoked in all jurisdictions, 14 Cyc. 406, and cases cited: 6 Ency. Pl. & Pr. 842; 9 R. C. L. 194. And this general rule is thus stated by Cyc. l. c., supra.

" 'While a plaintiff may dismiss any claim where such dismissal will not prejudicially affect the interest of defendant, he will not

be permitted to dismiss, to discontinue, or to take a nonsuit, when by so doing he will obtain an advantage, and defendant will be prejudiced or oppressed, or deprived of any just defense.' ''

In State ex rel. Quarry Co. v. Wurdeman (Mo.), 274 S. W. 380, l. c. 382, Judge WHITE makes the following observation:

''This section negatives the idea that a plaintiff may on his own motion, dismiss a suit at any time and under all the circumstances, because it fixes a period in which a plaintiff 'shall be allowed' to take a nonsuit. That implies that such final disposition of the case must be by order of the court permitting such dismissal; otherwise the word 'allowed' would not be used,'' and cases cited.

In the case of Nordquist v. Armourdale State Bank et al. (Mo. App.), 19 S. W. (2d) 553, l. c. 556, it is stated:

''Said Section 1410, Revised Statutes of Missouri 1919 (now Sec. 960, R. S. Mo. 1929), provides that the plaintiff 'shall be allowed to dismiss' under the conditions named; and while the court will ordinarily permit it as a matter of course under those conditions, it is still subject to the court's actual or implied permission, without which it is not effective.''

II. We agree with the contention of respondents that the testimony relied upon by the appellant was not properly presented and saved. It is the duty of the party offering such rejected testimony, to make a showing as to what testimony the witness will give, if permitted to answer, and the purpose and object thereof, together with the facts necessary to establish its admissibility; and that unless this is done there is no point raised for ruling by the appellate court. [3 C. J. 825 (736); State ex rel. v. Caruthers, 51 S. W. (2d) 126; Foman v. B. Liberty Life Ins. Co., 51 S. W. (2d) 212; Wainwright v. Westborough Country Club, 45 S. W. (2d) 86; Gregory v. Jenkins, 43 S. W. (2d) 877: Schuetter v. Enterprise Com. Corp., 34 S. W. (2d) 976.]

III. The evidence introduced by appellant company, failed to prove that it was the owner of the property described in its petition, so that when plaintiff attempted to dismiss its case the defendants were entitled to the money received by it from the sale thereof, and also to the possession of the lumber not sold.

IV. (a) Section 11593, Revised Statutes 1929, provides how the county surveyor shall proceed in sub-dividing a section of land into halves and quarters.

Before the location of the center line of Section 28 could be established it would have required of witness for plaintiff, that he show that he had located the line by his late survey, or by the records in his office, of former surveys, and after he had located it,

what he had done in making his survey. There was no evidence showing that the center corner of Section 28 referred to by witnesses Paulding and Humphreys, had been established by any surveyor. There was no evidence to show that either survey proceeded from any established corner or from the same corner, nor any offer to prove that such point was an established corner. A surveyor who attempts by parol evidence to establish a survey would have to show the same facts by parol that would have to be shown on the plat. This was not done. [Miller v. Halleran, 219 Mo. App. 196, 270 S. W. 427; Carter v. Spracklin, 246 Mo. 116, 151 S. W. 451; LaHue v. Hungenstock, 249 S. W. 1. c. 406; Ackerman v. Ryder, 271 S. W. 1. c. 746.]

V. (a) Evidence of a survey, which is not definitely shown to have been commenced from a corner established by the government, or re-established in accordance with our statutes, has no probative force and would not be admissible. [Roberts v. Lynch, 15 Mo. App. 456, 458, 459; Cordell v. Saunders, 52 S. W. (2d) 1. c. 839.]

(b) A surveyor's testimony is never receivable except in connection with the data from which he surveys, and if he runs lines they are of no value unless the data is established from which they are run and must be distinctly proven, or there is nothing to enable any one to judge what is the proper result. [Cordell v. Sanders, 52 S. W. (2d) 1. c. 839, supra; Roberts v. Lynch, 15 Mo. App. 458; Dolphin v. Klann, 246 Mo. 488, 151 S. W. 956.]

(c) A survey made by the county surveyor without giving the courses and distances to the points or lines from which he established the points and lines given in the survey as required by the statute is not admissible as an official record. [Clark v. McAtee, 127 S. W. 37; Wright Lumber Co. v. Ripley County, 192 S. W. 1. c. 1000; Cordell v. Sanders, supra.]

VI. Since the burden was on plaintiff to prove ownership of the property, and it did not make a prima facie case, there was no fact for defendants to prove. The answer demanded a return of the property or its value. The amount of lumber and money in the plaintiff's hands was shown by its witnesses. We think, under these facts, it was the duty of the court to direct a verdict for defendants.

"Thus the case is brought within the rule that, where the plaintiff, by the uncontradicted testimony of his own witnesses for whose credibility he vouches, affirmatively discloses that he is not entitled to recover but instead makes out a case for the defendant, the court should give a peremptory instruction based upon such testimony." [Mayhew v. Travelers Prot. Assn., 66 S. W. (2d) 199, 1. c. 203.]

It is our opinion that the testimony offered by appellant failed to show by any legal evidence, that appellant was the owner of the

land from which the lumber was cut or had any other lawful right to cut the same.

The location of the east line of the said NW¼ became an important question of fact in the case.

No evidence of sufficient certainty was offered by appellant, to establish said east line of the NW¼ nor was any survey or re-survey thereof offered by it, as provided by Sections 11581 and 11593, Revised Statutes of Missouri, 1929.

Therefore, for the reasons heretofore mentioned, it is our opinion that the judgment of the trial court, in this case should be, and the same is hereby affirmed. *Bailey* and *Smith, JJ.,* concur.