J. LEE MOTHERSHEAD, (Plaintiff) Respondent, v. FELIX J. MILFELD and JULIA MILFELD, his wife, (Defendants) Appellants, No. 41608—236 S. W. (2d) 343.

Division One, January 8, 1951.

Rehearing Denied, February 12, 1951.

*Dearing & Matthes* and *M. C. Matthes* for appellants.

*Sam McKay* and *Samuel Richeson* for respondent.

706

[344]  VAN OSDOL, C.—Plaintiff-respondent J. Lee Mothershead and Alta Mothershead, his wife, instituted this action to quiet title to Lot 8 of Block 3 of the City of DeSoto. By Count II of their petition, plaintiffs declared in ejectment to recover possession of Lot 8; and by Count III plaintiffs stated a claim for damages alleged to have been occasioned by defendants' careless excavation whereby a building on Lot 8 was allegedly deprived of its lateral support and was thus caused to fall.

Alta Mothershead, the plaintiff wife, has died since the institution of the action, and the plaintiff husband has prosecuted the action as sole owner of Lot 8.

While the action was instituted to quiet title, in ejectment, and for damages to Lot 8, Block 3 of the City of DeSoto, the actual controversy (at least the actual controversy as raised by the issues of Counts I and II) involves a narrow tract of land approximately 105 feet long, 1.70 feet wide at the east end thereof, and 2.69 feet at the west end. The north line of the narrow tract of land coincides with the north side of a concrete foundation wall recently constructed by defendants. Plaintiff asserts ownership of this narrow tract upon which the foundation wall has been constructed, as part of Lot 8, the record title to which Lot 8 is concededly in plaintiff. On the other hand, defendants contend that the narrow tract is a part of Lot 7, the record title to which Lot 7 is concededly in defendants. The parties, plaintiff and defendants, acquired their respective properties in 1944. When plaintiff bought Lot 8, there was a building on the lot. In years gone by, the building was the "Air-Dome Theatre," and more recently the building was reconstructed and used by A. R. Ellis, plaintiff's predecessor in title, in his garage business. We infer this is the building alluded to in Count III of plaintiff's petition. Hereinafter, we will refer to this building as the "Ellis building."

Defendants, by their answer to Counts I and II, stated their claim of title by adverse possession and asked for title relief. Defendants also alleged that the north line of the land occupied by them has been recognized for a long period of time as the true boundary line between Lot 7, now owned by defendants, and Lot 8, now the property of plaintiff.

By stipulation of the parties the action was tried upon Count I of the petition, it being agreed that the issues of Counts II and III might be tried at a later time. The trial court found the issues of Count I in favor of plaintiff and rendered judgment accordingly, from which judgment defendants have appealed.

Although the trial court did not specifically order a separate judgment upon the separate trial of the issues of the claim as stated in Count I of plaintiff's petition, yet, by stipulation of the parties, tacitly approved by the trial court, the issues of the claim stated in Count I were separately tried, a separate judgment was

entered, and a motion for a new trial was filed and overruled and this appeal perfected. We may consider the separate judgment entered on Count I of plaintiff's petition to have been a final judgment as if specifically ordered for the purposes of an appeal within the meaning of Section 126, Civil Code of Missouri, Laws of Missouri 1943, p. 353, at page 390, Mo. R. S. A. ·§ 847.126; and Supreme Court Rule 3.29. Title, evidencing ownership, is the issue as raised by plaintiff's claim as stated in Count I of the petition and in the answers filed by defendants to Counts I and II. Title is a supporting or underlying issue in plaintiff's claim for possession as stated in Count II; and title evidencing ownership with right to possession may be a supporting issue in plaintiff's claim for damages as stated in Count III. See Cantrell v. City of Caruthersville, 359 Mo. 282, 221 S. W. 2d 471; [345] Hoelmer v. Heiskell, 359 Mo. 236, 221 S. W. 2d 142. It was therefore advantageous to the parties litigant and to the trial court that title (the issue of Count I, a supporting or underlying issue in Count II and possibly in Count III) should be finally adjudicated by a separate judgment entered by the trial court to be examined in the review of the cause on the instant·appeal.

█ The trial of the cause was without the services of a jury, so we will review the case "as in suits of an equitable nature." Section 114, Civil Code of Missouri, Laws of Missouri 1943, p. 387, Mo. R. S. A. § 847.114.

█ Plaintiff did not undertake to substantiate his asserted ownership by proof of title by adverse possession. He does not contend he owns the controverted narrow strip of land regardless of whether or not it is contained within his Lot 8. As he stated from the witness stand, plaintiff claims "where the (Ellis) building was, from the north wall to the dividing line between Lots 7 and 8. That is all that belongs to me." See Brummell v. Harris, 148 Mo. 430, 50 S. W. 93.

In undertaking to demonstrate his title, plaintiff introduced the testimony of a witness, a surveyor of· admitted qualifications. The surveyor testified of surveys made by him showing that the narrow tract of land in question is a part of Lot 8. In making these surveys, the surveyor had recognized and used as starting points various monuments as set forth in an ordinance passed by the City of DeSoto on December 13, 1883. From the testimony of the surveyor it is clear that he started from no corner established by the United States government or from a corner re-established in accordance with Sections 13220, 13221 R. S. 1939, Mo. R. S. A. §§ 13220, 13221. See Schell v. City of Jefferson, 357 Mo. 1020, 212 S. W. 2d 430; Landers v. Thompson, 356 Mo. 1169, 205 S. W. 2d 544; Bowzer v. State Highway Commission, Mo. Sup., 170 S. W. 2d 399; Klinhart v. Mueller, Mo. Sup., 166 S. W. 2d 519.

It is quite doubtful that the line between Lots 7 and 8 can be ascertained by any survey commenced at any corner established by the United States government, or re-established in accordance with statute. The plat of the ''Town of DeSoto'' as executed, acknowledged and recorded September 24, 1857, makes no reference to any corner as established by the government, nor does it designate any monument as that used by the dedicators in surveying the land. The plat only purports to state that the ''Town of DeSoto'' as platted is situated on the ''Southern part of U. S. Survey No 2008 in Township No 39 Range 4 E.'' The plat is defective. However, since plaintiff and defendants acquired their lots by conveyances describing the land by lot number according to the plat, the plat *as the dedicators laid it out upon the land* was a part of the conveyances by which defendants and plaintiff acquired title to their respective Lots 7 and 8. Wright v. City of Joplin, 275 Mo. 212, 204 S. W. 910; City of Laddonia v. Day, 265 Mo. 383, 178 S. W. 741; Dolphin v. Klann, 246 Mo. 477, 151 S. W. 956.

Block 3, as shown on the plat of the ''Town of DeSoto,'' is comprised of 24 lots, each 125 feet long and 25 feet wide. Lots 1 to 12 front eastwardly on the west side of Main Street and are numbered from south to north. As stated, the qualified surveyor, plaintiff's witness, started from monuments named in the City's ordinance of 1883, and by his survey located the small tract of land in controversy as being a part of Lot 8. The surveyor prepared a plat of his survey (plaintiff's Exhibit 3) showing the dividing line between the Lots 7 and 8 as determined by the survey. The trial court incorporated the Exhibit 3 as part of the decree definitely showing the narrow tract to be a part of Lot 8, and rendered a judgment and decree fixing the dividing line and determining the fee simple title to Lot 8, as thus shown by the Exhibit 3, to be in plaintiff.

We have found no authority under which the City of DeSoto could undertake in 1883 to establish starting points or monuments from which surveys were to be made in order to determine the boundary lines of properties as shown upon the executed, acknowledged and recorded plat of 1857. (But it is not said the ordinance may not be [346] helpful in locating the lines between properties conveyed by descriptive boundaries in reference to the monuments stated in the ordinance.) It appears to us that surveys from the monuments provided by the ordinance ''do not fit'' the plat as outlined upon, applied to, or laid out upon the ground by the dedicators in their survey or by their sale of lots, and by the erection of improvements by the purchasers thereof, especially with respect to the lots platted in Block 3. Assuming that plaintiff's surveyor, starting from monuments named in the ordinance, correctly surveyed a dividing line between Lots 7 and 8, it appears from the evidence in the instant case that the monuments named in the ordinance were

not identical with those from which the survey was made by the dedicators in laying out the Town of DeSoto as platted. At least, the lines of the lots of Block 3 as determined by the surveyor, plaintiff's witness, were not in accordance with the plat as it was actually laid out or located *upon the land,* either by the dedicators or by those who have bought and improved lots.

The surveyor, plaintiff's witness, testified that at Main Street the north wall of the Ellis building, formerly upon Lot 8, was 3.38 feet north of the north line of the lot as determined by his survey. And it was furthermore stated that the north wall of the Ellis building was actually more than 25 feet from the north side of the narrow tract in controversy and the foundation wall erected by defendants. A building on Lot 12 of Block 3 does not extend beyond the north line of Lot 12, but the retaining wall and terrace, supposedly on the lot, extend over northwardly into the street (as located by the surveyor). The surveyor further testified that the "Kempe building," elsewhere in Block 3, where that building fronts on the street, is $8\frac{1}{4}$ inches north of the north line of the lot "on which it is supposed to be" (that is, north of the north line of the lot "on which it is supposed to be" as the north line of the lot was determined by the survey from the monuments stated in the ordinance of 1883); and the rear part of the Kempe building ("on the alley") is 2 feet and $\frac{3}{8}$ of an inch north of the north line of such lot as the north line of the lot was determined by the surveyor. An old stone building, located in the north part of Block 3, west of the alley, extends over the lot line (as located by plaintiff's surveyor) "a little over two feet."

It is assumed that plaintiff's witness made no error in his survey based upon the monuments as designated by the ordinance; yet, the consequences of a survey based on such monuments are demonstrated by four discrepancies in one block (Block 3) as between the plat of 1857 (as transposed upon the ground by the dedicators in an original survey and a sale of lots and by the location of improvements made by the purchasers of the lots) and the survey from the monuments named in the ordinance of 1883. It could be that other, if not all, lots in Block 3 are to some extent similarly affected. It seems the effect of surveys based on the monuments named in the ordinance would be to move the east-west lines of the lots of Block 3 something over two feet to the northward of where the property owners have supposed the lines to be. Compare Dolphin v. Klann, supra.

City of Laddonia v. Day, supra, was a case involving Smith's Addition to the City of Laddonia, in which case, because of a defective plat, it was impossible by a survey to definitely locate the property contained in the addition. This court was of the opinion that "in a case like this, where both parties claim under the same plat, neither the law nor good policy permits either of them to dispute the lines of the survey as shown by the plat as actually located

upon the land; and especially should this be true where the whole or a large part of the addition has been sold to various persons according to the actual location of the plat upon the land, and where the property and streets have been built upon and improved.''

There was substantial evidence introduced tending to show that for a long period of time a picket fence had stood between the property as occupied by plaintiff's grantors and the property occupied by defendants' predecessors in title. We refer to a photograph introduced into evidence, identified as ''Defendants' Exhibit D.'' The [347] picture, a circuit view of the north part of DeSoto, was taken about 1913. When the photograph was taken the fence appeared to have existed for many years. In 1913 the fence was old, sagging and broken. Substantial evidence was introduced tending to show that the foundation wall as constructed by defendants was set upon a line as formerly delineated by the picket fence. When defendants constructed their foundation wall, there was a post ''where the end of this fence was.'' The fence did not extend ''further north'' than the post. The excavation for defendants' concrete foundation wall ''was made at practically the same location where the post was - - - the north end (side) of the wall is about the north end (side) of the post - - -. It might have varied an inch or two, but I don't think so.'' There was no substantial evidence tending to show defendants' foundation wall was constructed north of ''where the end of this fence was.'' There had been a *''little space''* (variously estimated from 6 inches to 4 feet in width) between the picket fence and the south wall of the Ellis building on the Lot 8 as occupied by plaintiff and his predecessor in title. There was no evidence tending to show that former record owners of Lot 7 and Lot 8 had ever contended the fence was not on the true line. There was no evidence of any understanding that the fence was on a tentative boundary line subject to ascertaining the true boundary line at some future time. The former owners of Lot 7 had occupied their property up to the fence, although the former owners of Lot 7 had never claimed to own a ''little space'' (of variously estimated width) approximately of equally estimated width as the ''little space'' between the fence and the Ellis building. A photograph shows a cement floor once within the walls of a building constructed near the rear (west) end of Lot 7. The building has been torn down, disclosing that the north edge of the cement floor was within a foot of the south wall of the Ellis building. Another photograph, showing the foundation wall as constructed by defendants, indicates, and there was verbal evidence to the effect, that the foundation wall is ''two and one-half feet, something like that,'' from the concrete floor, which floor had been laid within the approximate seven-inch walls of the Ellis building formerly situate on Lot 8.

It may be reasonably inferred that the line formerly delineated by the fence and presently delineated by the north side of defendants' foundation wall is the true line between Lots 7 and 8.

A general doctrine has been stated that long acquiescence in a fence as a boundary line will warrant a presumption that it is the true line. 9 C. J. § 199, p. 246; 11 C. J. S., Boundaries, § 79, p. 652; Tillman v. Hutcherson, 348 Mo. 473, 154 S. W. 2d 104; cases annotated 170 A. L. R. 1144. Acquiescence for a length of time is evidence of a parol agreement that the line so delineated is to be considered the boundary line. And, where the line has been acquiesced in for a great number of years by all the parties interested, "it is conclusive evidence of an agreement to that line." Rockwell v. Adams, 7 Cow. (N. Y.) 761, at page 762; Lindell v. McLaughlin, 30 Mo. 28, at page 33. The boundary line thus agreed upon should be considered the true one. See generally Blair v. Smith, 16 Mo. 273; Turner v. Baker, 64 Mo. 218; Ernsting v. Gleason, 137 Mo. 594, 39 S. W. 70; Brummell v. Harris, supra; Barnes v. Allison, 166 Mo. 96, 65 S. W. 781; Martin v. Hays, Mo. Sup., 228 S. W. 741; Diers v. Peterson, 290 Mo. 249, 234 S. W. 792; Tillman v. Hutcherson, supra; Finck Realty Co. v. Lefler, Mo. Sup., 208 S. W. 2d 213.

We are of the opinion the defendants should be held to be the absolute owners of the narrow tract of land in controversy. And the title having been adjudicated in defendants, it is obvious that plaintiff may not maintain the action on his claim for possession, as stated in Count II. We, of course, are not informed as to the manner in which defendants made their excavation for the construction of their foundation wall, and the cause should be remanded for the trial of the issues of Count III, if plaintiff desires; but it should be borne in mind the issues of title, ownership and possession, in so far as such issues may affect plaintiff's claim as [348] stated in Count III, have been finally determined.

The judgment and decree should be reversed and remanded with directions that a judgment be entered determining defendants to be vested with the fee simple title to and are in the lawful possession of Lot 7, Block 3 of the City of DeSoto, the north line of which Lot 7 is ascertained to be along the north side of the foundation wall as constructed by defendants and projected in the same alignment westwardly from the west end of the foundation wall to the alley.

It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.