IN THE COURT OF APPEALS
AT KNOXVILLE

# FILED

**December 1, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STEVEN R. LINN, SUSAN D. LINN, DAVID L. LINN and WILMA R. LINN | ) ) ) | CAMPBELL COUNTY 03A01-9903-CH-00080 |
| Plaintiffs-Counter- Defendants-Appellees | ) ) ) ) | |
| v. | ) | |
| VERA E. ELROD and OLIN D. ELROD | ) ) ) ) | HON. BILLY JOE WHITE, CHANCELLOR |
| Defendants-Cross- Claimants/Counter- Claimants-Appellants | ) ) ) ) | |
| v. | ) | |
| ANNA LEE LEINART GROSS, Trustee of the Anna Lee Leinart Gross Trust | ) ) ) ) | |
| Cross-Defendant | ) | REVERSED AND REMANDED |

T. SCOTT JONES OF KNOXVILLE FOR VERA E. ELROD and OLIN D. ELROD

VIC PRYOR and KATHY PARROTT OF JACKSBORO FOR STEVEN R. LINN, SUSAN D. LINN, DAVID L. LINN and WILMA R. LINN

J. PHILLIP HARBER OF CLINTON FOR ANNA LEE LEINART GROSS

Goddard, P.J.

The suit presently on appeal originated by Steven R. Linn and his son, David L. Linn, and their wives filing suit against Vera E. Elrod and Olin D. Elrod, seeking a mandatory injunction requiring removal of a fence erected upon property the Linns claim to be owned by them.  Upon the filing of an answer and the counter-complaint by the Elrods and the adding of a third-party, Anna Lee Leinart Gross, as a Defendant, it resolved itself into a property line dispute.

The Chancellor found that a survey by Tony Crutchfield of the Lindsay Mill Subdivision, in which all parties own lots, correctly set out the location of the parties' property lines which resulted in a decree favoring the Linns and the Third-Party Defendant Gross.

The Elrods appeal raising two issues.  They insist that the evidence preponderates against a finding by the Trial Court that the Crutchfield survey accurately disclosed the property lines rather than that of their surveyor, Sam Bruner. They also insist that Mr. Crutchfield, the surveyor relied upon by the Linns whose survey was accepted by the Chancellor, was not at the time he made his survey a registered licensed

surveyor and, consequently, incompetent to testify regarding his survey.

The parties, as already noted, all owned lots within the Lindsay Mill Subdivision recorded in Map Book 2, Page 26, in the Register's Office of Campbell County. The Linns own lot number 19, which describes the property conveyed by metes and bounds and does not reference the lot number or the recorded plat.[1] The Defendant Olin D. Elrod owns lot number 21, the Defendant Vera E. Elrod lot number 18, and the Defendant Gross lot number 20 (see appendix). None of these deeds contain a metes and bounds description, but instead refer only to the recorded plat. Although three surveys were introduced as exhibits--Easter,[2] Crutchfield and Bruner--only Mr. Crutchfield and Mr. Bruner testified. The deed to the Linns describes the property as being a part of TVA tract XNR-41 on the right bank of the Cove Creek embayment of Norris Lake and begins "on an iron pin on 1020 contour line[3] of Norris Lake, being 560 feet more or less northeast of TVA concrete monument number 517.6."[4]

Mr. Crutchfield's plat shows the Linn lot does not reach contour 1020, but, rather, the southeast corner is approximately at contour 1029, which point is some 29 to 30 linear feet northwest of the 1020 contour line. Mr. Crutchfield does, however, insist his survey of the property lines of lots 18 and 21 and his plat of lots 19 and 20 are

accurate because of several iron pins and angle irons he found in the approximate location of some of the corners he established. He does concede, however, that the pins were not uniform, some being angle irons and others rebar pins. He also conceded that he did not know the origin of the pins, although Mr Crutchfield assumed they were placed there by the person who originally surveyed the subdivision:

> Q. Now, relative to the pins that you actually discovered in the ground that you relied upon, you have no idea personally who actually placed those pins or where those pins came from, they just appear to correspond with what you feel are the corner points? I'm talking about the pins that you found.
>
> A. That's correct.

The fallacy of Mr. Crutchfield's survey is that neither lot 18 nor 19 reach contour line 1020 as called for in the Linn deed and shown on the recorded plat. Moreover, a portion of lots 18 and 21 would encroach upon the Tennessee Valley Authority transmission line easement (see appendix), although the recorded plat clearly shows that this easement is a boundary of the subdivision. Having said this, we recognize that the survey introduced by Mr. Crutchfield does not show lots 18 and 21 encroaching upon the easement, but that the easement adjoins these lots. This discrepancy is explained by the fact that Mr. Crutchfield assumed the transmission line was the center line of the easement, when in fact it was southwest of the center line, as shown by the appendix.

We would further observe that notwithstanding Mr. Crutchfield's testimony that the pins placed on the property would prevail over the recorded plat, we are of the opinion that when property is conveyed by lot numbers and the corners of the lots can by survey be established on the ground, the plat would prevail.

On the other hand, Mr. Bruner first established the beginning corner of the Linn lot by surveying the line from TVA concrete monument number 517-6, the exact location of which is undisputed northeast to contour line 1020. This point is mentioned in the tract conveyed to the subdivider of the subdivision by the United States of America, acting as agent of the Tennessee Valley Authority. The deed to the subdivider makes a portion of the property subject to certain conditions relative to commercial and recreational use. One point in this restricted tract is the same as the beginning point of the Linn tract and refers to TVA monument 517-6:

Beginning at a point in the 1020-foot contour on the northwest shore of an inlet of the Cove Creek Embayment and in the boundary of the above described tract of land from which US-TVA Monument 517-6 in the boundary of the above described tract of land bears S10$^\circ$W[5] at a distance of approximately 560 feet; thence from the point of beginning N44$^\circ$W, approximately 580 feet to a point.

It is also noteworthy that the last call above set out has the same bearing (N44$^\circ$W) as the first call in the Linn deed.

Although Surveyor Bruner found no stakes, pins or other markings at the corners he established, his survey did conform to the Linn deed and the recorded plat which showed lots 18 and 19 adjoining the 1020 contour line.

The Chancellor, as already noted, accepted the Crutchfield survey.

It is true, as found by the Chancellor, that the lots, if established in accordance with the Bruner survey, would be different from that insisted upon by the Plaintiffs and the Defendant Gross. However, as already noted, a determination in favor of the Crutchfield survey would place a portion of lots 18 and 21 both on a TVA transmission line easement.

Our Supreme Court, in the case of <u>Pritchard v. Rebori</u>, 135 Tenn. 328, 332, 186 S.W. 121, 122 (1916), states the general rule with reference to boundary line disputes, as follows:

The general rule is that in determining boundaries resort is to be had, first, to natural objects or landmarks, because of their very permanent character, next, to artificial monuments or marks, then to boundary lines of adjacent owners, and then to courses and distances. But this general rule, as to the relative importance of these guides to the ascertainment of a boundary of land, is not an inflexible or absolute one.

Applying the foregoing to the facts of the case at bar, we find that contour line 1020 is somewhere between a natural object or landmark and an artificial monument. We say this because we understand that should an excavation or fill occur along the lake bank it would affect the location of contour line 1020, extending the length of a piece of property if a fill occurred and reducing its length should soil be removed.

In the case at bar there is no definite proof that any excavation or fill occurred. The only evidence on the matter is the testimony of Mr. Linn as follows:

A.     Now, wait a minute.

THE DEPONENT:  Your Honor, can I sort of make a question here?

A.     If the 1020 line, I've heard that it changes, you know, silt washes down in and the 1020 line is supposed to be the water level when it's at full pool. But just like across from us they graded down and graded out into the water. That changed the 1020 line all the way around his property. I don't know this. I'm just saying I've heard it.

The above, of course, is hearsay; however, no objection was made and Mr. Linn's source of information is not revealed. Additionally, it might be argued when he uses the words "over there," he was speaking of the other side of the embayment.

Moreover, Mr. Linn concedes that a pin placed by Surveyor

Easter represents the current 1020 contour line.

As to the Chancellor's determination, he recognized that under his finding none of the parties would have direct access to the lake because the lots do not reach contour line 1020.  He attempted to rectify this problem as follows:

If we now move the established lots forward to comply with the Bruner survey we skew all the lot lines.  We will be encroaching across established lot lines that have been marked on the ground and established by usage of over thirty years.

The recognition of the Crutchfield survey and the well established lot lines create a slight problem in that there are six to eight feet from the lot lines to the 1020 contour marker.  I believe the ownership of this sliver of land would be in the adjoining lot by claim and usage and would not create a problem.  The worst problem would be to move all the lot lines long established in order to attempt to cover the eight feet along the 1020 contour.  This would create havoc on all the lots.

It is, therefore, my opinion that the Crutchfield survey should establish and recognize the long recognized lot lines and let adverse possession control the eight feet left by the mistake of a surveyor of long ago.

In all deference to the Chancellor, we find no evidence in the record to support any adverse use by any party to the suit.

Before concluding, we are aware that the Chancellor made reference to "long-recognized lot lines."  However, also in all deference to the Chancellor, our review of the record does not disclose any such proof.  Indeed, it is undisputed that Ms. Elrod, who had earlier employed Mr. Crutchfield to

perform a survey for her, disputed his finding as to the boundary line between lots 18 and 19.

We accordingly conclude, upon the record before us in this case that the location of the boundary lines between lot 18 and lot 19 and between lot 20 and lot 21, is as shown by the Bruner survey. Our determination, of course, only binds lot owners who are parties to this litigation.

In light of our disposition of the first issue, it is unnecessary that we address the second.

For the foregoing reasons the judgment of the Trial Court is reversed and judgment is entered as to the dispute in accordance with the dictates of this opinion. The case is remanded for further proceedings, if any, as may be necessary and collection of costs below. Costs below and on appeal are adjudged one-half to the Linns and one-half to Ms. Gross.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Charles D. Susano, Jr., J.


_____
D. Michael Swiney, J.