IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2002 Session

## WILLA BELL HUSKEY v. JERRY MARTIN

**Appeal from the Chancery Court for Monroe County**
**No. 12,939     Jerri S. Bryant, Chancellor**

**FILED JULY 12, 2002**

**No. E2001-02312-COA-R3-CV**

This is a property line dispute. The defendant Jerry Martin appeals the trial court's finding that the parties' shared boundary line is as alleged in the original complaint. Martin argues that the evidence preponderates against the trial court's factual findings regarding the location of the boundary line. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Steven B. Ward, Madisonville, for the appellant, Jerry Martin.

Clifford E. Wilson, Madisonville, for the appellee, Willa Bell Huskey.

**OPINION**

I.

The property line in dispute is a portion of the southern boundary of the plaintiff Willa Bell Huskey's property. Huskey filed her complaint on April 20, 2000. It alleges as follows:

> That approximately four (4) years ago, the Defendant began removing portions of the line fence which was located on the common boundary as between the Plaintiff and the Defendant. That in approximately 1997, the dispute arose as between the parties as to whether or not the Defendant should be removing the fence posts and

the attempts by the Defendant at that time to encroach on the Plaintiff's property.

\* \* \*

That in early March, 2000, the Defendant, without permission of the Plaintiff, had a large mobile home pulled from Country Side Lane across property belonging to the Plaintiff, after which the mobile home was located across the boundary line of the two properties, leaving the mobile home protruding onto the property belonging to the Plaintiff in the area where the fencing had been removed by the Defendant.

Huskey asked the court to establish and declare the boundary line, and to order Martin to remove his mobile home from the portion of the property declared to be hers.

This dispute proceeded to a bench trial on May 17, 2001. The trial court held that "the Plaintiff had sustained the averments of the Complaint." It established the boundary line as alleged in the complaint. The court also ruled that Martin "shall have thirty (30) days from the entry of this Order within which to remove his mobile home and any other of his personal property from the property determined to be the property of the Plaintiff."

## II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995). The trial court's conclusions of law, however, are accorded no such presumption. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993).

## III.

A statement of the evidence was filed in this Court pursuant to Tenn. R. App. P. 24(c). It reveals that the parties agree as to the location of the northwest corner of Martin's property. They also agree that the northwest corner is located in the southern boundary of Huskey's property, and that the line in dispute begins at a one-half inch diameter aluminum pipe marking the aforesaid corner and proceeds generally east, terminating at the recently-renamed Country Side Lane.[1] They disagree vehemently as to the direction of the disputed line. Huskey argues that the line runs straight

---

[1]The earlier name was Old Highway 68.

east as a continuation of her southern boundary line, which line actually commences at a point west of the aluminum pipe. Martin argues that the property line changes direction at the aluminum pipe, proceeding in a slightly more northeasterly direction than the line claimed by Huskey. The boundary line claimed by Martin would give him approximately 26 additional feet of frontage on Country Side Lane.

In May, 1995, Martin had his property surveyed by Luther D. Hayes. See Appendix. Hayes testified that he utilized the deeds of the parties to conduct his survey. Hayes further testified, as recited in the statement of the evidence,

> that he did find a partial fence which went in a Westerly direction from an existing 1/2" aluminum cap which was shown on the plat he prepared as being a corner of Martin, Huskey, and Bowater, and that extending that line in a straight line in an Easterly direction was along the line claimed by the Plaintiff ... He further testified that there seemed to be something across [Country Side Lane] that tied in with that same straight line claimed by the Plaintiff and that the district line is the line claimed by the Plaintiff.

Huskey's deed calls for an eastern boundary line of 744 feet, fronting Country Side Lane. The line terminates "in the western edge of [Country Side Lane] at a corner with Rankin Holcomb and a culvert." Hayes testified that he started at "the ditch or culvert" and measured 744 feet generally south along the road. According to him, his measurement terminated at the point claimed by Martin as his northeast corner.

Huskey testified that she and her husband moved to her property in 1985. She testified that there were old fence posts that ran in a straight line along the boundary line at issue. Huskey testified that Martin had removed some of the fence posts, and that in March, 2000, he brought in a mobile home that extended onto her property some 25 feet.

Huskey's son, James A. Huskey, testified at the trial below. The statement of the evidence reflects his testimony as follows:

> [T]hat the Southern boundary line of the property began at a pipe at its Southwestern corner and ran in a straight line with both Bowater and Martin along an old fence to a marker which is located on the East side[2] of [Country Side Lane]. Mr. Huskey further testified that he had two discussions with Mr. Martin, the second one around 1989,

---

[2]It is true that the statement of the evidence reflects that Mr. Huskey alluded to the "East side" of the road. This is curious since both the Huskey and Martin tracts lie entirely on the west side of that road. In any event, this "marker" is not critical to the decision in this case.

at which time Mr. Martin had removed some of the fence posts and had started mowing some of the property belonging to the Plaintiff[.]

Travis Holcomb, Martin's neighbor to the south, testified that he had known the property in question since 1947. Holcomb stated that his brother had once owned the property now owned by Huskey. He further testified that

it was his recollection that there was a fence which started at the road and went in a straight line passing the Martin property and then the Bowater property in a Westerly direction to Huskey's Southwestern corner. He further testified that this was a straight line and that it did not change direction and that the fence was definitely there in 1947 and that there was a cedar tree in the fence row at the highway.[3]

The following excerpt from Martin's deposition was read as a part of Huskey's proof:

Q: Okay, there was a fence, was there not, or at least a line of posts that ran all the way from [Country Side Lane] all the way back to the western corner?

A: Not as long as I can remember. I mean I can't remember no fence a being there.

Q: Well, sir, there were posts there, were there not?

A: No, there wasn't posts there.

Q: Did you take some of them down?

A: No.

Q: You never took a single post down?

A: Not except just where I fenced in the front yard and I took them down, but no line fence or anything. I didn't know there was a line fence there.

A county tax map was introduced that shows the boundary line at issue running in a continuous *straight* line with the district line, a position consistent with the description of the

---

[3]No evidence remains of the cedar tree to which Holcomb referred.

southern boundary line in Huskey's deed.  The line shown on the tax map is the boundary line argued for by Huskey.

IV.

Martin contends on appeal that the trial court erred in finding that the evidence preponderates in favor of Huskey's position. More specifically, Martin argues the following, as quoted from his brief:

> The Chancellor gave undue weight to the existence of the district line and the disputed testimony about the old fence. The only undisputed testimony was the ditch on Plaintiff's opposite boundary and the call for 744 feet from that ditch in Plaintiff's deed ... The Chancellor should have given the greatest weight to the uncontested proof.

The general rule regarding the disposition of a property line dispute is as follows:

> When determining a boundary line that is in dispute, the court must look first to the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent pieces of property, and finally to courses and distances contained in documents relevant to the disputed property.

*Mix v. Miller*, 27 S.W.3d 508, 513 (Tenn. Ct. App. 1999). Martin, while acknowledging this general rule, cites the Supreme Court case of *Pritchard v. Rebori*, 135 Tenn. 328, 333, 186 S.W. 121, 122 (Tenn. 1916), where the court noted that "this general rule, as to the relative importance of these guides to the ascertainment of a boundary of land, is not an absolute or inflexible one." *Id.*

We find nothing in the record to support Martin's contention that the trial court applied the rule in *Mix* in an "inflexible" manner. Rather, the record supports the opposite conclusion, *i.e.*, that the trial court carefully considered and weighed all of the evidence in a manner consistent with the principles set forth in *Mix* and *Pritchard*. Due to the conflicting testimony regarding the existence of fence poles along the alleged property line, the credibility of the various witnesses was an important consideration in this case. "When the trial judge has seen and heard a witness's testimony, considerable deference must be accorded on review to the trial court's findings of credibility and the weight to be accorded to that testimony." *Cutler-Hammer v. Crabtree*, 54 S.W.3d 748, 753 (Tenn. 2001). Based on our review of the record, we find that the evidence does not preponderate against the trial court's factual findings underpinning its holding in this case.

V.

The trial court's judgment is affirmed. Costs on appeal are assessed to the appellant, Jerry Martin. This case is remanded to the trial court for enforcement of the judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE